CHANCERY.

*Case* 79.

### Baxter *vs* Bailey.

ERROR TO THE CLARKE CIRCUIT.

*Fraud. Mistake. Deeds of gift.*

*January* 20.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

The question involved.

WE are inclined to the opinion that the deed of gift to Amanda Baxter, was not executed on the Thursday immediately preceding the death of Wm. Baxter, but in the preceding week. We do not, however, regard this as the turning point of the case, and some of the minute circumstances bearing upon it may not have been fully comprehended.

The precise time of the execution of the instrument, is only material as it might tend to show that the donor was imposed on in procuring the deed, which, as he was becoming more and more feeble every day, might have been more easily done at a day near that of his death, than at one only a little more remote. We are not satisfied, however, that at any time before the day of his death, he became actually incompetent to execute the deed of gift, except at such short intervals of stupor or fainting, or occasional delirium as may have been incident to his feeble and diseased condition. We do not understand that it is even contended that the deed was executed in one of these intervals, and we think it may be assumed that the donor knew that he was executing a deed of gift to his daughter Amanda, for the slave Sam, and that he might have understood its terms if he had then read or heard them. Upon the question whether the deed was read to or by him, there is a con-

trariety of testimony. We suppose it was not read but was signed without an actual scrutiny of its contents.

But the deed had been written and prepared at his request by a person in whom he had confidence. It was presented for execution by that person, not in secret nor in presence of the donee only, but in the presence of the assembled family and friends of the sick father, who was in fact, urged and assisted in its execution, by one of the sons, who said they all knew what was in it. Neither this son nor the writer had, so far as appears, any interest in increasing the extent of the gift. But all the members of the family who were present, except the donee, had an interest in restricting it; and it does not appear that there was any impediment to the inspection of the instrument by any of them, before and while it was being executed. There were at least six or eight persons present in the room, and actually looking on and witnessing the transaction, besides the donor and donee. It is hardly credible that if fraud or imposition had been intended, its consummation would have been attempted under such circumstances. All presumption of intentional fraud is, as we think, fully repelled, not only by the absence of apparent motive, but by the actual circumstances under which the deed was executed. The writer may, however, from mistake or ignorance, have made the gift more extensive than it was intended to be, and this may not have been known to the donor or others who were present. The deed gives to the daughter, as an extra gift, a single slave, Sam, to her separate use during her life, "and at her death to her bodily heirs, if any there be," and if none, then to the donor's heirs. It is contended that the father had only intended to give to his daughter, Amanda, who was sickley and unmarried, and who it seems to have been expected by the family would not marry, the slave Sam, for her life, and to return to his heirs on her death, and that the words importing a gift to her bodily heirs after her death, are contrary to the intention of the donor, and not having been understood by him as being in the deed, are void.

---

Margin note (right side):

BAXTER
vs
BAILEY.

A deed of gift executed by a father to a daughter, in his last illness, in presence of five or six members of the family interested against it, without objection, not presumed to have been fraudulently obtained.

BAXTER
vs
BAILEY.

Reasons why the
parol testimony
should not con-
trol the deed of
gift as written
and signed, and
which repel the
idea of fraud or
mistake.

The actual intention of the donor is attempted to be proved by the testimony of witnesses detailing his conversations with respect to the intended disposition of his property and of the boy Sam. Some of these witnesses state that he said he intended to give Sam to his daughter during her life, and then to go to his heirs; others state that he said he intended the gift to her, without adding any such limitation; and some say that he expressly said he would give Sam to his daughter and her heirs. And the writer of the instrument, who says he understood the effect of the words "bodily heirs," says also that he made the deed according to his understanding of the intention and direction of the donor. It is true there is some confusion in his statements, and the effect of his testimony is impaired by the detail of other statements of his of different import, or at least differently understood, and especially by his statements in the course of a private and preliminary examination or interrogation by the party opposed to the deed, to which he seems to have submitted. There are, however, several circumstances calculated to diminish the weight of this impeaching testimony. And every attempt to compare the evidence as to the verbal declarations of the donor, and to deduce therefrom an inference as to his actual intention, still leaves the mind in doubt. But we are not satisfied that the donor ever instructed the draftsman to draw the deed so as to confine the gift to the life of his daughter, and to exclude her issue if she should have any. Such an event may not have been contemplated as probable, and therefore it may have been expected and spoken of, that on her death the slave would revert to the estate and to the other heirs. And this idea may have produced the impression that even if she should have issue, that issue was not to take under the gift. But without speculating upon the words which may have been used or the ideas which may have been annexed to them by different individuals, we think there are several facts and considerations operating in favor of the deed as written, which should sustain it against the doubts and suspicion

of mistake which the testimony just referred to may be calculated to produce:

1. The actual circumstances under which the deed was prepared and executed, repelling as they do, all presumption of fraud, are also calculated to sustain it against the mere presumption or suspicion of mistake, and to require proof amounting to reasonable certainty, before the deed should be destroyed.

2. There is proof that Sylvester Baxter, one of the sons of the donor, knew that the deed was to Amanda and her heirs. There is proof authorizing the inference that Richard S. Baxter, another son and the administrator of his father, knew the same fact, and also that it was known at or soon after the execution of the deed, to J. S. Evans, a son-in-law and one of the principal witnesses. And while the proof of the declarations of the donor is contradictory and uncertain, the acquiescence of these parties interested against the deed, tends most strongly to prove that it was, in fact, such as it was intended, and ought to have been. If this acquiescence had only continued while Amanda remained single, it might have been attributed to the knowledge that she was to have a life estate at any rate. But as even after her marriage, no movement was made, nor even a word spoken against the full operation of the deed according to its terms; and as the same state of things continued even after the early death of the donee, leaving an infant son, whose title was, in effect, acknowledged, at least by Evans; and as no intimation of an adverse claim was made until a quarrel as to the guardianship of the child of the donee, seems to have sprung up between Evans and the father, we think the inference may be fairly indulged, that the deed was, in fact, in accordance with the known intention of the donor.

3. The non-production of the original deed which came to the hands of Evans after the death of the donee, is also entitled to some consideration, and especially in rebutting completely, the inference insinuated in argument, that the clause in favor of the donee's bodily heirs, was interlined after the execution of the instru-

ment. There is, in our opinion, no ground whatever for this suggestion. No witness identifies this clause as being the one which was interlined. And although one witness speaks of an interlineation having been made in the clerk's office, he does not state that it was after the execution of the deed. And if he did, his reference to the concurrence of the clerk, and the deposition of the clerk, and the improbability of the fact, would make the statement extremely improbable, if not incredible.

Upon the whole, we are of opinion that the complainants have not made out a case which authorizes the Court to pronounce the deed, or any part of its terms, to be void on the ground of fraud or mistake, or to decree the relief sought by the complainants.

Wherefore, the decree is affirmed.

*Huston and Robertson* for plaintiff; *Eginton* for defendant.