Chief Justice Marshall
delivered the opinion of the Court
The County Court of Campbell county having at its November term 1848, rejected the will of Gen. James Taylor, a writ of error was, on the 22d day of March following, sued out from the Campbell Circuit Court by G. W. Berry and R. T. Thornton, as trustees named in *474 said will, and on the 12th day of June following, a writ of error was sued out from the same Court in the name of Ward and wife, and Foote and wife, and John E. Harris, both for the reversal of the same order of said County Court rejecting the will. But John E. Harris having died before any of the proceedings in Court, this last writ stands in the name of the other parties. Upon each writ a summons issued against James Taylor, jr. and H. T. Harris and wife, J. W. Tibbatts and wife and G. T. Williamson and wife, being the four heir's of the decedent and the husbands of the female heirs. The summons on the second writ also included the widow of the decedent, and Berry and Thonrton, trustees, who were plaintiffs in the first writ. The summons in each case was executed on all the persons named therein except Williamson and Wife, who resided in Cincinnati, but who having had due notice of the proceeding, appeared in each case and entered themselves as defendants, and they and Tibbatts and wife, who were also entered as defendants, seem to have been the only contestants of the will in the Circuit Court. A trial was had in each ease, and in each case a judgment was rendered, reversing the order of the County Court, and establishing the will, with the proper orders for its being recorded in the Circuit and County.Courts, and a judgment for costs against the defendants in error. And Tibbatts and wife and Williamson and wife having appealed fi’om each of these judgments, the two cases though tried separately in the Circuit Court, have been heard and submitted together in this Court, not as one case, but as two cases presenting substantially the same questions, except as to the question whether the respective plaintiffs in the two writs of error from the Circuit Court to the County Court, had such interest as authorized them to prosecute such writs.
The probate of a will before a court of competent jurisdiction, is binding upon all persons, whilst it remains in force — subject only to reversal by appeal, writ of error, or bill in chancery under the statute of 1797.
*474 The two cases on Wells’ Will, (5 Litt.273, and 4 Mon. 152,) and the case on Singleton’s Will, (8 B. Mon. 340,) and other cases recognize and establish the principle that under our system for probate of wills, and indeed, as necessarily flowing from it, the probate or rejection *475 of a will by the proper tribunal having the case regularly before it, is like a sentence, in rem, conclusive, while it remains in force, in the same and in all other Courts, and between all persons, whether formal parties to the record or not; and that the proceeding for the probate of wills is in the nature of a proceeding in rem, presenting the question of will or no will, not as a mere question of property which can be effectually decided only between the parties to the record and their privies, but as an abstract question, the decision of which by a competent tribunal, having the question properly before it, is while it stands binding upon all the world. By whom and in what manner this question may be presented, is a matter regulated by law. And as a will may be proposed for probate in the County Court by any person interested in its establishment and may be contested there by any one having an opposite interest, and may without contest and on ex parte proof be there established or rejected with conclusive effect except so far as the sentence is subject to reversal; and as any person interested against such sentence, whether a party to the original record or hot is authorized by the act of 1842, (3 Slat. Law, 586,) to prosecute a writ of error from the Circuit Court, whereby the question of probate, that is the question of will or no will, is brought fully within the jurisdiction of that Court, which is authorized to try the case not merely upon the record of the County Court, but upon original evidence, as if it were a Court of original jurisdiction, it seems to follow that if the writ of error be prosecuted by a competent party, and a final decision of the question of will or no wfill be had, it must have the same effect as if all parties interested on the same side had united in the writ, and that if proper parties for contesting the reversal be also before the Court, its sentence, like that of the County Court, must be conclusive upon all while it remains in force, and subject only to an appeal or wi’it of error, and to the remedy for contesting the validity of a will by bill in chancery under the 11th section of the act of 1797.
The Circuit Court is not to reverse because all persons interested in the will were not before the County Court — but that Court should have all the parties interested in maintaining the 'will, before the Court.
A writ of error may be prosecuted by an interested party to the Circuit Court, which brings up tlie whole question of will or no will, & precludes a second writ by another parly interested on the same mide.
The third section of the act of 1842, supra, expressly provides that the judgment of the inferior Court shall not be reversed here because all the persons interested in the will were not made parties to the controversy in that Court. The object of the writ of error being to reverse the decision of the County Court, and to bring before the Circuit Court the question of will or no will, it is doubtless the duty of that Court to take care that the parties interested in maintaining the judgment shall have an opportunity of doing so, and that the contest proposed by the writ of error shall not be a merely pretended controversy. But the provision just referred to, shows that it is not necessary that all persons interested in the question should be actual parties. And even if the provision should be confined to those persons who are interested in sustaining the will, it corroborates the position above stated as to the sufficiency of the writ of error prosecuted by any party interested in maintaining the will, and as to the conclusiveness of the sentence, if such writ be prosecuted by a competent party. Whether any other persons who may be interested in supporting the will, should be summoned upon the writ of error prosecuted by one or more, having such interest, may be a matter within the discretion of the Circuit Court. But if the actual plaintiffs have an interest, and are thus competent to prosecute the writ and present the question, and if the parties appearing to be interested against the will are before the Court, the proceeding would seem to be perfect in point of form, and such as to authorize a decision conclusive upon all persons whether parties to the record or not.
As one writ of error by a competent party brings up to the Circuit Court the whole case, and presents the question entire and not divisible on the ground of parties or their interests, and authorizes a decision which shall be binding upon all interests, it must be considered as if it were prosecuted for and by all parties interested on the same side as the actual plaintiffs, and as, therefore, precluding any subsequent writ by any other of these parties, as completely as it precludes one by the *477 actual plaintiffs. The anomalous consequences of allowing two writs in such a case, are sufficiently illustrated in the present records, which contain two distinct judgments reversing the same indivisible sentence, and two distinct mandates establishing the will and directing it to be recorded. If the cases were properly distinct so as to admit of distinct trials and judgments, there might have been different testimony and a different result in the two cases, and the stijl greater anomaly might have been exhibited of a judgment and mandate affirming the sentence of the County Court and rejecting the will, and another mandate of the same Court, rendered at the same term, reversing the same sentence of the County Court, and establishing the same will and ordering it to be recorded.
The statutory system of Kentucky for proof of wills, does not admit of two writs of error by different persons having the same interest in the proof or rejection of the will: but the Circuit Court cannot dismiss two writs, both brought by competent plaintiffs, because they are so brought, nor dismiss the first before trial, because a second is brought and pending.
Our statutory system of probate does not admit of such consequences. If the plaintiffs in both writs were competent to prosecute a writ of error to the judgment of the County Court, they might have been required to unite as plaintiffs in one of the writs, or they might have been consolidated in some form; or if not, as the trial and judgment upon the first writ decided the whole case upon the question of admitting the will to probate, there should have been no trial on the second writ. And if under the doubts entertained as to' the competency of the respective plaintiffs to maintain a writ of error in the case, it might have been prudent to make the final disposition of the second depend upon the final decision of the question of competency arising on the other, so that there might be a future trial on the second writ, if the first were unavailing, this might have been provided for without the expense of an'actual trial. But as the Court was not bound to notice, while one case was before it, what had been or might be done in another, the course to be pursued in the case of two writs, as above supposed, must in a great measure depend upon the movements of the parties,, and the extent to which the proceedings in one case are brought to notice in the proceedings in the other. And in revising the opinions and acts of the Circuit Court, this Court *478 can only see what was in each case before that Court when it acted.
It appears then that after an ineffectual motion by Wil'liamson and wife to remove the case from the Campbell Circuit Court into the Circuit Court of the United States for the district of Kentucky on the ground that they were non-residents and the plaintiffs in the writ residents and citizens of Kentucky, and after a like ineffectual motion by the contestants to continue the case on the ground of the absence of a witness, and of the absence also of the counsel who had been engaged to appear and manage the case for the same parties, a motion was made in each case by the contesting parties to dismiss both writs of error, and to dismiss each, and on this motion, in each • case, the writ of error in the other case was read, but no other part of the other record, and the motion was, in each case, overruled. It is now contended, on' the authority of the cases of Carr vs Callaghan, (1 Marsh. 22,) and Castleman vs Holmes, (7 Mon. 591,) that this motion should have prevailed. The motion was made solely on the ground that the two writs of error could not both be prosecuted, because the judgment being joint did not admit of several writs of error, and on the further ground that the plaintiffs having improperly sued out several writs, had no right to elect between them, or to amend either at their option, and that consequently both should have been dismissed. The interest of the respective plaintiffs, authorizing them to prosecute a writ of error, is not denied, but is rather admitted in this argument, and was not disproved on the motion. It cannot be assumed, in deciding on this preliminary motion, that none of the plaintiffs were competent. Berry and Thornton are described in their writ, as trustees named in the will, and, prima facie, had an interest under that description. If the plaintiffs in the other writ had no interest, their prosecution of a separate writ, furnished no possible ground for dismissing both writs. And if all the plaintiffs are assumed to have been competent, then as the first writ was maintainable in the name of *479 the plaintiffs therein, without the addition of others, the prosecution of a subsequent writ by other competent parties furnishes no reason for dismissing the first writ. The cases referred to do not apply, because in a case of probate any party interested may prosecute a writ of error singly, although their be other parties interested on the same side of the question, but in the case of a joint decree or judgment for money or property, the unsuccessful parties have not a right to prosecute separate writs of error. It is true, that if in the present case, if each writ is valid, both ought not to be prosecuted, because either being sufficient for the whole case and for all parties, there may be, in addition to other reasons, the .same objection to the prosecution of both as to the prosecution of two suits for the same cause by the same plaintiff, but this objection affects the second suit and not the first, and does not, even at law, prevent an election unless presented in a particular manner.
Where there appears a defect of right on the face of the writ of error to prosecute it, the Court may quasli or dismiss it unless amended— yet if it show no right on its face, yet aver a right or interest, the Court will not dismiss without examining into that right. It mightrequirethe party to show •prima fade a right.
If, on the face of each writ of error, it had appeared that the parties plaintiffs therein had no right to prosecute the writ in which they were plaintiffs, it might have been proper to quash or dismiss both writs on motion, unless an amendment had been proposed by which the objection would have been obviated. And so it might have been proper to dismiss either writ separately, if on its face the plaintiffs therein appeared to have no interest which authorized its prosecution. But, as already stated, the writ of Berry and Thornton expressly showed a prima facie interest in the will. And although the writ of Ward, &c., did not state their connection with the will, nor the character or interest claimed "by them, yet as it did not show that they had no interest, and as their allegation that they were injured by the rejection of the will implied a claim under it, we think the Court was not bound on this preliminary motion, and in the absence of all evidence, to assume that they had no interest. It might have been proper, in point of form, to state in the writ of error the nature of the interest claimed, or the character in *480 which the plaintiffs sued out the writ, and they might perhaps have been required to amend the writ accordingly, or to show their interest. But as this was not done, and as all the facts on which their interest and right to prosecute the writ depend, were afterwards fully developed in each case, we certainly should not send the case back to be dismissed on this motion and for the formal defect in the writ of error, if it appears on the whole record that these plaintiffs have an •interest under the will. Then, although the other writ showed prima facie an interest in the plaintiffs therein sufficient to prevent its dismissal, yet as it contained no conclusive evidence of that interest, and no further evidence was produced on the preliminary motion to dismiss the second writ, it would have been improvident to dismiss this last on the ground that there was a pri- or writ by different parties, who stated themselves to be interested, but whose interest was not otherwise proved as against the plaintiffs, and who might finally have failed for the want of sufficient interest.
The’Courtwill look into the will itself to see the ¿interest of parties contesting it.
•We do not .perceive, .therefore, that under any assumption which the Court was bound to make or could properly make on these preliminary motions, there was any error in overruling eitheir of themotions above referred to. .As to which, we further observe, that if this proceeding be at all subject to the rules applicable to ordinary cases, neither of the .motions, could properly have been made in either case, exceptthe motion to dismiss the particular writ then before the Court for trial, because the parties to that writ alone were before the •Court on the motion, and the mere reading of .the other writ, as between those parties, did not subject it to the power of quashal or dismissal.
It appears, however, that after .the will was in each case fully proved, and without opposing testimony upon any .point involved, and while the will was before the Court showing .the nature of the trust .to Berry and Thornton, and when it had been proved that .the plaintiffs in the second writ of error were the daughters of Mrs. Harris, a daughter and devisee of the decedent, *481 and the question of their interest was dependent on a construction of the will. The contestant upon these facts and upon proof that Mrs. Harris had other children besides the plaintiffs in the second writ, and that the two daughters of the decedent who were contesting the will had each several children living,moved the Court-in each case to dismiss the writ therein for want of interest in the plaintiffs therein, and also because the proper parties were not before the Court. And upon these motions, which were overruled, the question whether the trustees in the first case, and in the second case whether the grand children of the testator have any interest under the will was fully and fairly presented.
On motion to dismiss a second writ of error, brought by others who were also interested in the will, and no proot of tvhat was decided underthe first writ, it was properly overruled.
Before coming to the consideration of this question, which is the real matter of contest between the parties attempting to establish the will and those who oppose it, we remark that the plaintiffs in these writs appear to to have summoned all persons having an apparent interest in opposition to the will, and the omission to summon the children of the contestants or others who have the same interest that the plaintiffs have, was no ground for dismissing either writ, as is evident not only from the provision of the statute already referred to, but also from the nature and effect of the proceeding as before explained. And further, although when this last motion was made as to the second writ of error, there had been a trial on the first and a judgment establishing the will, and thus in effect affirming the right of the first plaintiffs to prosecute their writ, arid although the plaintiffs in the second writ and all others were entitled to the same benefit from this judgment as the actual plaintiffs in the first writ were, still not only was this judgment appealed from, and- its validity dependent upon the final decision of the question of the interest of the plaintiffs therein, but in fact it was not shown in the trial on the second writ, nor on the final motion to dismiss it, that there had been any trial or judgment in the first writ, nor indeed that it was still pending. For these reasons and because the final motions to dismiss- were made expressly on the special *482 grounds of defect of parties and of want of interest in the plaintiffs respectively, the first of which has been disposed of, the only remaining question on the final motions to dismiss is, whether the respective plaintiffs had such interest as authorized them to prosecute a writ or writs of error.
The statute of 1842, allowing writs of error from the County to the Circuit Court in will cases, does not define the nature of the interest which the plaintiff must have in the provisions of the will or its rejection, but allows a writ of error or appeal by any verson interested.
The statute (3 Stat. Law, 586,) does not define the nature or extent of the interest which may be requisite or sufficient, but enacts that any person interested may prosecute a writ of error or appeal from the decision of a County Court refusing or granting probate, &c. It is sufficient if the plaintiffs have any interest. And the Court must use its power over the proceeding to prevent a party, having but little interest, from betraying or sacrificing the rights of other parties having a much greater interest on the same side. We proceed then to enquire, first, as to the plaintiffs in the first writ of error, and then as to the plaintiffs in the second writ, whether they have any interest under or in the will, which authorized them to proceed by writ of error, to have it admitted to probate.
By the seventh clause of the will, a large tract of land is devised to the testator’s three daughters, to be equally divided between them, and they to have the sole and exclusive use and benefit of the same and the rents thereof during their natural lives, and at their decease to go and descend to their heirs forever. If his said daughters desire it, 120 or 150 acres of this land is to be laid off into lots and sold and conveyed in fee or perpetual lease as they may choose, and to effect this object the Circuit Court may appoint a trustee, &c. In the second clause of the second codicil the seventh clause is-referred to, and the testator revoking the power therein given to the Court, appoints W. J. Berry and R. T. Thornton trustees, and directs them to lay off 200 acres on Licking river, adjoining the town of Newport, as an addition to the town — that they shall lease out one half of the property for fifty years or for a different term if they deem it best and most profitable to testator’s heirs — at the expiration of the leases the *483 property to revert to such of testator’s children or their heirs, to whom the same may have been assigned by said trustees — who are to divide the leases between the three daughters, and at the expiration of the leases, the title to vest in the heirs of the daughters to whom the leases were assigned. The other moiety of said ground or lots, the trustees are to sell and convey to the purchasers — the sale to be on such terms and conditions as like sales are made — “they, the said trustees, holding the legal title to the property until the same is paid for in full.” The funds arising from such sales the trustees are to invest in improved or productive property in Newport, Cincinnati, or Covington, yielding a-fair rent, or, if the daughters prefer it, they may have houses for rent erected, &c. A subsequent clause requires that the property acquired and purchased by the trustees from the above described fund, they are to divide equally between the testator’s three daughters, “who are to have and to hold the same during their natural lives, and to receive the rents and profits thereof, and at their death the remainder, in fee, to vest in their heirs forever, and the said trustees are to pause the titles to he made in this way to them.” An intermediate clause provides that such trustees shall receive from the proceeds of the sales of said property a fair compensation for their services in laying out, selling, leasing and building on it, and are to keep an accurate account of expenses, &c.
It would seem from the direction that the trustees should hold the legal title to the land or lots sold by them until payment of the purchase money, that the testator considered the title to be in them. And as it would be more convenient and more intelligible to purchasers that the title should be in the trustees, who were to sell and convey the lots, than 'that it should be in married daughters of the testator, but to be sold and conveyed by the trustees, we think it highly probable that he intended to put the title in the trustees. It would certainly not be a strained construction of the words “they holding the legal title,” to consider them *484 as sufficient together with the appointment of the trustees, to invest them with the title. But although we might be inclined to the opinion that this construction, conforming to the powers and duties of the trustees, would meet the probable intention of the testator, we do not suppose that the trustees cannot be otherwise interested in the will, than by having the legal title of the land. Conceding that they have not the legal title, and therefore have no legal interest in the land itself, have they not an interest in the will, and in the question of its rejection or establishment?
Trustees appointed to execute important trusts are such parties in interest as may prosecute a writ of error or appeal from a decision of the County Court against the validity of the will.
They are trustees appointed by the testator to execute and carry out his will in a very important matter. They are to lay off 200 acres of land, presumed to be very valuable, into town lots, one half to be leased by them for long terms, and they are to divide the leases between the three daughters, &c. The other half they are to sell, and the proceeds are to be invested by them in other city or town property, (except so far as the daughters may desire it to be expended in the erection, for rent, of buildings by the trustees on their lots, &c.,) and the trustees are to cause the title to the property, acquired by this fund, to be so made that the three daughters between whom it is to be divided, are to have and to hold the same during their natural lives, and to receive the rents and profits thereof, and at their death the remainder in fee to vest in their heirs forever.
These 200 acres may, it is true, form a small part of the very large estate disposed of by the will, and it would seem that a portion of the 200 acres was, after the date of will, conveyed by the testator to W. J. Berry, one of these trustees, in trust for purposes substantially similar to those in the will. But even the remainder is presumed to be very valuable. But however this may be, and whether the trust extended to the whole or to a part only of the estate devised by the will, the question of interest in the trustees is the same, and it seems to us they have an interest in the will which authorizes them to prove it, if not for their own benefit, for that of others, whose rights and interest it *485 is their duty to protect by the express terms of the trust. Suppose the trust, as expressed in the will, had extended to the whole of the testator’s real estate, whether great or small, and that his daughters being his only heirs, had had no children at the time of his death but were then married, it might be that the daughters and their husbands being opposed to the will, it might be rejected in the County Court at their desire or for want of proof; what, in such case, is to become of the interest intended to be secured to the expected issue of these daughters? Have the trustees, who are to sell the land and invest the proceeds in other land to be so conveyed that at the death of the daughters, the title shall vest in their heirs, a right to abandon this duty expressly enjoined on them, and to sacrifice the interests specially committed to their protection, at the will of the heirs who have a counter interest? Nay, the question is whether they must abandon this duty and suffer the interests committed to them to be thus annihilated, because, or when the person whose interest is intended to be secured by the will are not in being? Surely there must be some person authorized to sustain the will of the testator, and to preserve and to protect the interest intended to be thereby created and secured; and, in the case supposed, the trustee appointed for the very purpose of carrying out the will in this respect must be authorized to maintain the will itself, which is the foundation not only of his power and duty, but of the rights and interests for the sake of which the power and duty are created. He is trustee of these powers and rights and interests, not indeed for his own benefit, but for the benefit of others. And although he may have no direct interest in any visible part of the estate or its proceeds, nor any personal pecuniary interest in the trust, he represents and in effect holds the interests of others which it is his duty to maintain, and which depend for their existence on the establishment of the will. We think that such a trust is itself an interest in the will, or in the question of will or no will, which authorizes the trustee to prove the will and to *486 prosecute a writ of error to reverse an order rejecting it. And the principle is the same, whether the intended beneficiaries of the trust are in being or not, and especially when, although there may be persons in being, who, in the existing state of things would be entitled, it is uncertain whether they are the persons who will be entitled in the event.
Trustees who are required to execute an important trust confided by a will, and who are to be paid for their services, are such interested persons as may prosecute a writ of error or appeal from a judgment of the Court rejecting the will: Ellison vs Arrey 1 Ves.sr. 115.)
An interest is also claimed for the trustees on the ground of the direction that they shall be compensated for their services, &c., out of the proceeds of the sales to be made. And this claim seems to be sustained by the decision of Lord Eldon in the case of Ellison vs Airy, (1 Vesey, sr, 115,) where it was determined that such a direction was a legacy to the trustees. But we do not deem it necessary to place the right on this ground, when there is a broader and more satisfactory one in the nature of the trust and in the interest committed to the trustees. And we will not assume that these interests would or could be altogether defeated by the right of the daughters to have houses erected, &c.
We are of opinion, therefore, that the final motion to dismiss the writ of error of the trustees for want of interest, was properly overruled. And the question arises as to the interest of the plaintiffs in the second writ of error. The will contains many devises of land to the three daughters, either separately, or to be equally divided between them, and using the general terms, to have and to hold during their natural lives, or to receive the rents and profits during their natural lives, and at their death, remainder to their heirs forever; or at their death, the title to vest in their heirs for ever or in fee. It is contended that under these devises and others substantially like them, the fee simple vests in the first devisees (the testator’s daughters) by the rule in Shelly’s case, and that their husbands have, therefore, no interest in the will. Or, that if this be not so, and if the remainders can be kept separate so as to vest in the heirs, as purchasers, at the death of their mothers, respectively, still the two- female plain *487 tiffs, though daughters and heirs apparent of Mrs. Harris, one of the devisees for life, are not her heirs while she lives, and may die before her, so as never to be entitled under the will. But the same might be said of all of the present heirs apparent of each of the daughters. And if the argument is sufficient to defeat the writ of error in the name of two them, it would seem to be entitled to the same effect if all of them were plaintiffs. And the consequence would be that if their parents and the executors desired or acquiesced in the rejection of the will, there would be nobody competent to prosecute a writ of error for its reversal, at any rate until the death of the devisees for life, which might not occur for fifty years, when, by the loss of evidence or other circumstances, the proof of the will might become impossible, and when owing to intermediate dispositions of the property, the devises in remainder might be frustrated or greatly obstructed. To these views might be added others of a similar tendency, such as relate to the desirable certainty in titles to lands, and the propriety and policy of a speedy determination of the question of will orno will; and also the express and short limitation of the time for prosecuting a writ of error to a judgment of the County Court rejecting or admitting the will. And it is by no means certain that if the remainder to the heirs be construed to make them purchasers, the heirs apparent should not be considered as having such an interest in the establishment of the will, even though they may have no vested interest in the estate itself; as would authorize them to prosecute a writ of error in the case.
Devisees in remainder have such an interest as authorizes them to prosecute a writ of error or appeal from a judgment oi the Court of probate rejecting the will.
But there are, in our opinion, certain devises in the will which, either by explaining the other devises, or by their own direct operation, do show that the children of the testator’s daughters have a vested interest in a considerable portion of the estate, or do give such interest in particular parts of it, and if they have such interest in any portion of the estate, that is sufficient. The 29th section of the will, after providing that the testator’s daughters might set off to their sons, on ar *488 rival at age and to their daughters on marriage, one half of the estate to which such grandchild would be entitled on the death of the mother, which portion should not be subject to division on the mother’s death, says that the remaining half of the estate devised to his daugters, as aforesaid, will go to their children in fee at their demise, and provides that should any of his daughters have a child after the advancement made as above, then such after born child or children shall have their full portion of the estate given to my daughters to be taken out of the part remaining in his daughter’s hand until her death. And then follows this explicit declaration: “The intention is that all my grandchildren shall have an equal share of their mother’s estate, except John Harris, who is provided for in this will.”
In determining the construction of wills, the whole should he considered, and 'if possible, effect given to the 'whole will.
This section is justly relied on as showing clearly the Intention of the testator not only that his daughters should have no greater interest than for life under the devises referred, to, but that his grandchildren the children of each of those daughters should have among them at the death of their respective mothers, equal shares of the estate: that is the property devised to the mother for life. And it is contended that if the section does not itself give an interest to the grandchildren, the explicit declaration of intention contained in it, must control the construction of the devises to which it refers, and that as it shows that by the heirs -of his •daughters, the testator meant their children, these devises should be construed as giving' the estate to the .daughters for life-, remainder t'o their children in fee. And that as they had children at the date of the will, and of the testator’s death, the remainder vested at the •latter period in such of the children as were then living, subject to open and let in those who should after-wards be born.
Such a construction of the devises would repel the application of the rule in Shelly’s case, if it should be otherwise applicable as an existing rule. And we should be of opinion that the devises under this construction *489 would give a vested interest as contended for, or at least an actual interest, which is sufficient. But as this is not a suit for property but a proceeding to establish a will, and the question now is not as to the extent of the interest of the plaintiffs in the writ, but as to the existence of any interest, the necessity of going into the general question as to the construction and effect of the devises referred to, is, in our opinion, obviated, if not by the specific directions in the second clause of the second codicil, as to the conveyances their provided for, at least, by the specific devise contained in the sixteenth section; in which, after various directions and dispositions relating to his ferries across the Ohio, &c. the testator says: “My children are to have the rents and profits of said ferries during their natural lives for their separate, sole, and exclusive use and benefit, and at their deaths the same is to vest in their children, the children of my son James to have one fourth part of said ferries at his death.”
Though a devisee in remainder may possibly be defeated by subsequent events, yet one who is apparently entitled as devisee, may prosecute a writ of error or appeal from a decision refusing to record the will.
There is no devise of the ferries or the profits thereof to the daughtei's and their heirs, but a devise of the profits (or say of the ferries) to the daughters for life, to vest, at their respective deaths, in their respective children. It cannot be more than a devise to the daughters for life, remainder to their children respectively. Under this devise we are of opinion that the remainder vested in the children of the daughters who were alive at the testator’s death, and in all who might be aftewards born, at the moment of their birth; and that however the remainder in the living children might be affected by subsequent events, as their own death or the birth of other children, it was an interest which authorized the prosecution of the writ by any of them. As to the vesting of the- remainder on the death of the testator, the case of Turner vs Patterson, (5 Dana, 296,) and the authorities there cited, and to which others might be added, are referred to as expressly in point.
There was no error, therefore, in overruling the motion to dismiss this writ for want of interests in the plaintiffs.
The tvOelftlr section of the act of Congress of 1783 does not authorize the transfer of suits in progress from an inferior to a superior Court of the State, to the Federal* Courts, nor do its provisions apply to will cases, nor to cases where all the parties, plaintiffs or dei';ndants, are not citizens of diffeie.u Slates.
As to the other preliminary motions first above stated, but little need be said. The attempt to transfer the case to ,the Federal Court had no plausible ground to sustain it. The 12th section of the act of Congress of 1783, to establish judicial Courts of the United States, does not, in our opinion, authorize the removal of a suit in its progress from the inferior to the superior or appellate tribunals of the State, and we think it has no application to this proceeding for the probate of a will. And if it were applicable to the case, the fact that the plaintiffs in the writ of error were citizens of Kentucky, and that two only of several defendants were citizens of another State, does not bring the case within the act, because all of the defendants are not citizens of another State. The petition seems to apply to the case of the trustees alone, as it contains no statement that the plaintiffs in the other writ were citizens of Kentucky. In any view of the case, the petition was properly denied.
■ The motion for a continuance, so far as it was founded on the absence of a witness was properly overruled, because it does not show that the witness would have proved any thing advantageous to the party asking the continuance, nor does it state what he would prove; and it does not show a sufficient excuse for not having summoned him. He was, moreover, a co-plaintiff in one of the writs, and if present, could not have been made a witness without the consent of himself and co-plaintlff. True, he was a subscribing witnessto the original will. But it was proved by two other subscribing witnesses. And not having been used as a witness in proving the will, the fact that he attested it could not give a right to make him a witness in his own case. But the other reasons are deemed sufficient to justify, in each case, the refusal of the continuance on account of his absence.
As to the absence of one of the counsel, who had been employed to contest the will, or the right of the plaintiffs in the writs of error. It cannot be admitted that when, as in this case, competent counsel practis *491 ing in the Court are present when a case is called in which they are engaged, the absence of a distant counsel, though caused by misfortune, is a conclusive ground for continuing the case. The question of continuance must, under such circumstances, rest in the sound-discretion of the Judge, and we cannot say it was abused in the present case. Having thus traveled through all the decisions upon the various motions made in the Circuit Court, and found no error which should produce a reversal. We are of opinion that although upon putting the two records together, as presented in this Court, the first trial and judgment seem to present a-sufficient objection to the record; yet as the proceedings in the first case were not introduced into .the second, and as upon each record taken separately, it appears that the will was properly admitted to record as the will of James Taylor, deceased, which is the whole effect of both judgments, except as to the costs, we do not perceive that the plaintiffs in this Court were or are prejudiced by the two judgments except as to the costs. It appeared, indeed, from the will that Berry and Thornton, as trustees, had an interest in the will which authorized them to prosecute a writ of error, but the fact that they had in fact sued out one was only shown in the second case on the preliminary motion to dismiss the second writ. And even if it be supposed to be a part of the case on the trial under the second writ, or might be considered in determining the propriety of the judgment, there being no proof of the proceedings under it, we do not see that it was necessarily entitled to any effect in preventing a trial or upon the question of costs. We observe, also, that there is no assignment of error questioning the judgment for costs.
Mandate.
Then as in each case the will was fully proved, there seems tobe no ground apparent in either record for reversing the judgment and orders therein. The judgment in each case is, therefore, affirmed. But as it appears to this Court upon the two records submitted and argued together that both judgments, so far as they reverse *492 the judgment of the County Court and establish the will and order it to be admitted to recoi’d, are for the same thing, we think it proper, in order to avoid further anomaly and to prevent unnecessary costs, to direct in the mandate of affirmance that the will be recorded in the Circuit Court but once, and that there be but one mandate to the County Court.
Robertson and Harlan for plaintiffs; Morehead Sf Stevenson, Robinson &¡- Johnson and Loughborough for plaintiffs.