CASE 85—WILL CONTEST—NOVEMBER 3.

# Lischy v. Schrader, Etc.

APPEAL FROM DAVIESS CIRCUIT COURT.

1. JUDGMENTS NOT BINDING ON PARTIES NOT BEFORE THE COURT— WILL CONTEST.—A judgment, dismissing an appeal, entered by consent in the Circuit Court upon an appeal from the County Court from an order probating a will, is binding only on the parties who were before the court and will not be a bar to subsequent appeal by a party in interest who was not before the court when the agreement was made.

2. VERDICT—CONFLICTING EVIDENCE.—Where there was evidence tending to establish the exercise of undue influence, and also evidence tending to show a lack of testamentary capacity, the verdict of a jury in a will case is to be treated as the verdict of a jury in any other civil case, and will not be set aside by this court unless flagrantly against the weight of evidence.

ROBERT S. TODD AND REUBEN A. MILLER FOR APPELLANTS. (LITTLE & LITTLE OF COUNSEL.)

1. The judgment of a County Court probating or rejecting a will is a judgment *in rem*, binding not only on parties and privies,

[ 42 ]

but on all the world. Statute of 1797, Morehead & Brown's Statutes; Ky. Stat., secs. 4850, 4851, 4859, 4961; W. & A. Singleton v. Singleton, et. al., 8 B. M., 340; Wells' Will, 5 Lit., 275; Jacob v. Pulliam, 3 J. J. M., 200; Tibbatts, &c., v. Berry, &c., 10 B. M., 473; Mitchell and Wife v. Holder, &c., 8 Bush, 362; Reed v. Reed, Trustee, &c., 91 Ky., 267.

2. When an appeal is prosecuted to the Circuit Court from an order of the County Court probating or rejecting a will, the order of the Circuit Court made on the appeal has precisely the same effect as the order of the County Court, and binds not only those who were before the court, but also any omitted heir or devisee who was not before the court. Singleton v. Singleton, 8 B. M., 340; Tibbatts, &c., v. Berry, &c., 10 B. M., 473, and cases cited.

3. When a suit or action is dismissed by agreement, the legal deduction from the judgment is, that the parties had by their agreement adjusted the subject matter of the controversy in that suit, and the legal effect of such a judgment is, that it is a bar to another suit between the same parties on the same cause of action. Bank of Commonwealth v. Hopkins, &c., 2 Dana, 395; Jarboe v. Smith, 10 B. M., 257; United States v. Parker, &c., 120 U. S., 89.

4. The dismissal of a suit by agreement is equivalent to a *retraxit* at common law, and is a bar to another action. United States v. Parker, &c., 120 U. S., 89; 1st Freeman on Judgments, sec. 262.

5. A *retraxit* at common law is the open and voluntary renunciation of his claim by a plaintiff in court, and by this "he loses his action." 3 Blackstone's Com., 296.

6. Where a judgment is not only dismissed by agreement, but is dismissed "settled" by agreement, it is still more conclusive that it is a bar to another action between the same parties.

7. If the judgment in the Circuit Court was a bar as to John C. Schrader it was likewise a bar, under the rule established by this court, as to James P. Schrader, as it was a sentence *in rem*, whether based on a hearing or on consent; and it was the expression of the power of a peculiar jurisdiction, operating on an indivisible question and defining the status of the thing. The peculiar quality of such an order depends not at all on the form or basis of the judgment, but wholly on the subject matter of the controversy.

8. The case of Hughey v. Sidwell's Heirs, reported in 18 B. M., 259,

cited by appellee, simply decides that an equitable action to annul a will can not be maintained without an appeal to the Circuit Court, and does not sustain the contention of the appellee in this case at all. Hughey v. Sidwell's Heirs, 18 B. M., 259; Abbott, &c., v. Traylor, &c., 11 Bush, 335.

9. There is no evidence whatever in the record to justify an instruction on the subject of undue influence, and no instruction should have been given on that subject.

LITTLE & LITTLE, ALSO FOR APPELLANTS.

1. The will was freely executed and rational and just in all its details.

2. The animus of this contest—a pretermitted daughter-in-law.

3. The will did not cut off the unborn children of testatrix's sons.

4. A devise by a mother to her son for life, with remainder over to her other children in the case the life tenant died childless, is an implied devise to the children of the son, if any are living at his death. 28 Am. & Eng. Enc. of L., 386; Bently v. Kaufman, 12 Phila., 435; Still v. Spear, 3 Grant's Cas., 307; Sturges v. Cargill, 1 Sandf. Ch., 318.

5. Words and limitations may be transposed, supplied, or rejected where warranted by the immediate context or the general scheme of the will. 3 Jarman on Wills, 708.

6. An estate given by will may be extended or enlarged where it is apparent to the court that such a course is necessary to effectuate the intention of the testator. Kirkland v. Cox, 94 Ill., 400; Latham v. Udell, 38 Mich., 238.

7. The children of appellee were not at his death limited to his interest in the McLean county farm.

8. The best possible proof of a sound and disposing mind is a rational act done which reason could alone have conceived and accomplished. Weir's Will, 9 Dana, 434.

9. Insanity is characterized by fits and lucid intervals. 1 Williams on Executors, 23.

10. Although insanity once shown may authorize the jury to infer its continuance, yet the presumption that it continues is only *prima facie,* and may be rebutted.

11. When a *prima facie* presumption is rebutted by competent evidence, the jury can not disregard such evidence. Ky. Cent. R. R. Co., v. Talbott, 78 Ky., 621.

12. Notwithstanding mental aberration, if the will is evidently ra-

tional and the product of the testator's own mind, it will be up-
held. Weir's Will, 9 Dana, 434; Turner's Will, 4 J. J. M., 536;
Schild v. Rompf, 9 Ky. Law Rep., 120; Williams v. Williams, 15
Ky. Law Rep., 432.

13. No evidence of undue influence.

14. The relation of parent and child gives rise to no presumption
of undue influence. 27 Am. & Eng. Enc. of L., 504.

15. Undue influence can be inferred from other facts proved, but
never from mere opportunity. Cudney v. Cudney, 68 N. Y.,
148; Kimball v. Cudney, 117 Ill., 213.

16. It is immaterial that a provision in a will was suggested by
another if adopted by testatrix of her own free accord. 27
Am. & Eng. Enc. of L., 497.

17. Abstract instructions tend to mislead and confuse juries and
should never be given.

18. In neither Bledsoe v. Bledsoe's Exr., 8 Ky. Law Rep., 55, Lucas
v. Cannon, 13 Bush, 650, or Barlow v. Waters, 16 Ky. Law Rep.,
426 (cited by appellee's counsel), are the facts sufficiently stated
to sustain the instruction as to undue influence given in this
case. The question is not as to the correctness of the abstract
rule, but as to its application.

19. Overall v. Bland, 11 Ky. Law Rep., 371; Bush v. Lisle, 89 Ky.,
393; and Fry v. Jones, 95 Ky., 148 (cited by appellee's counsel)
afforded no support to the instruction referred to.

20. Where four or five witnesses are offered to prove want of
testamentary capacity, and over forty unimpeached witnesses
contradict them and support capacity, a verdict against the
will is against the weight of evidence and should be set aside.
Zimlich v. Zimlich, 90 Ky., 657.

SWEENEY, ELLIS & SWEENEY for appellees.    (R. W. SLACK
AND J. H. MILLER of counsel.)

1. No appeal was taken by John, as, in the absence of the issual
of summons, or if issued, having it placed in the hands of an
officer, there was no action in court. The steps taken were
merely preparatory to an appeal, which was compromised out
of court, and the entry of the agreement of the order book was
a nullity.

2. Appellants claim that the agreement and order was a judgment
*in rem*, and a final decision, establishing the paper as the will
of the testatrix, and that appellee's only remedy was by peti-

tion in equity to set aside that order and try the question as to the validity of the will, in so far as it affected his rights, as provided in section 4861, Kentucky Statutes. Section 4859, Kentucky Statutes provides, that upon appeal to the Circuit Court a jury, or if no jury is demanded, the court, shall determine whether the paper produced is the last will of the testator, and the final decision given shall be a bar to any other proceeding to call the probate into question. The agreement entered of record in this case is not a decision as to whether the paper produced is, or is not, the last will of the testatrix. The court never considered the matter, and consequently never rendered any decision. Section 4861, Kentucky Statutes, provides that any one interested, and who at the time of the final decision in the Circuit Court was not served with process, or a party by actual appearance, might within three years after such final decision impeach the decision, and have a re-trial of the question of probate.

Appellee could not proceed in equity to impeach that agreement or order, because it was not a final decision as to whether the paper produced was the last will of the testatrix, and his only remedy was by appeal from the order probating the will. Ky. Stats., secs. 4859 and 4861; Hughey v. Sidwell's heirs, 18 B. M., 259; Tibbatts v. Berry, 10 B. M., 473.

3. If the attempted appeal of John Schrader had been perfected, and it had been compromised before a trial and dismissed, such proceedings could not be construed into a final decision of will or no will.   The parties to the compromise might be estopped as between themselves from afterwards appealing, but their action in the matter could not convert their compromise into a final decision so that any other interested party, and being neither a party to the compromise nor a party on the record, would be forced to or could resort to an action in equity.

4. The agreement plead could not operate as a bar, for if it had any validity at all, it was only an estoppel as between the parties who made it.

5 Appellee alleged in his response to the plea in bar that the compromise and the entry thereof as an order was obtained by fraud. Appellants never denied that allegation. It being admitted to be fraudulent, can not possibly be a bar to any proceeding by appellee.

6. It is not a bar or an estoppel between the parties who made it, because not mutual, as under it none of the parties excepting

John agreed to not appeal. It is at least certain that appellee, James Schrader, could not have plead that agreement or order in bar or in estoppel of any appeal that John or any of the other parties to it might have thereafter taken from the order of probate, as he paid no part of the consideration, and if he could plead it they could not do so.

7. The agreement, if binding at all, is binding only upon John Schrader and his wife, because it in express terms says that the payment made to them is "a satisfaction and bar of any contest of said will by them or either of them."

8. The entry on the order book of the Circuit Court made on February 22, 1894, of the compromise agreement, did not convert the agreement into a judgment, and it was a nullity because there was no action in court. John Schrader simply filed with the clerk during the January term, 1894, of the Daviess Circuit Court a transcript for an appeal upon which no summons was issued, or if issued, was never placed in the hands of an officer, and was never served, and the steps taken were simply preparatory to an appeal to the next term of court, which he never perfected but compromised out of court with some of the persons he contemplated making parties to his attempted appeal.

Effect of Verdict.—In the Court of Appeals "the same effect shall be given to the verdict of a jury in will cases as is given to the verdict of a jury in other cases," Ky Stats., sec. 4850; Williams v. Williams, 8 Ky. Law Rep., 419. In this action the jury found against the plea in bar, thus finding that appellee was not a party to John Schrader's appeal, never assisted in procuring or procured the compromise plead, and was not bound by it.

The jury also found a verdict in his favor as against the will. There was not only sufficient evidence to sustain both verdicts, but enough to overwhelm appellant's contention, and· we apprehend this court will not disturb the verdict; and,

9. The instructions complained of by appellants (those given and those refused are analyzed at pages 20 and 25, both inclusive.)

The correctness of the instructions given by the lower court are sustained by the authorities cited at the foot of each instruction; also the correctness of the court's ruling in refusing to give certain instructions asked by appellants is sustained by the authorities cited at the foot of said instructions.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

On the 17th day of January, 1894, the will of Margaret Griffith, who died, a resident of Daviess county, on the 14th day of the same month, was probated in the Daviess County Court; and, on the 20th day of January thereafter, her son, John C. Schrader, one of the devisees under the will, took an appeal from the order of probate, making all the other heirs and devisees appellees. The Daviess Circuit Court was in session when this appeal was taken, and at the same term a compromise was effected, and the following order was made in the case: "State of Kentucky. Daviess Circuit Court, January Term, 1894. February 22, 1894. John C. Schrader, Plaintiff, v. Effie Schrader, etc., Defendants. By the agreement and consent of the parties appellant and appellees to this appeal from the order of the Daviess County Court probating the will of Margaret Griffith, deceased, dated January 17, 1894, the appeal and contest of said will is now, for the consideration herein stated, the receipt of which is acknowledged, settled, and the appeal dismissed, said consideration being the payment to Jennie Schrader, the wife of John C. Schrader, the sum of $2,000, the receipt of which sum Jennie Schrader acknowledges by fixing her signature hereto, which said settlement and payment are accepted and received by John C. and Jennie Schrader as in satisfaction and bar of any contest of said will, by them or either of them; and this action is dismissed. [Signed] John C. Schrader. Jennie Schrader." The three daughters of Mrs. Griffith, the appellees in that appeal, paid the $2,000 mentioned. The present appellee, James P. Schrader, at that time resided in McLean county, and was not before the court on that appeal, no process having been issued thereon; but the three daughters of deceased, who paid

the money, entered their appearance to the appeal; and, pursuant to the agreement made with John C. Schrader, his appeal was dismissed, and no further steps were taken as to the will until the 19th day of September, 1895, when James P. Schrader and John C. Schrader filed a second appeal from the order of the Daviess County Court probating the will of their mother. Before the trial of the issue involved in the second appeal, the appellees in that appeal, Mrs. Lischy and others, filed their plea in bar thereof, in which they set up the first appeal of John C. Schrader, and the disposition of that contest by the order above referred to, and relied on same as a bar to the second appeal, against both John C. Schrader, and the present appellee, James P. Schrader. Separate demurrers to the plea in bar were filed by John C. and James P. Schrader, which the court overruled as to John C. Schrader, but sustained as to the appellee James P. Schrader. Subsequently the plea in bar was amended, appellants alleging that James P. Schrader had participated in the settlement above referred to, knew of the negotiations which preceded and induced the appellees on the first appeal to make the settlement and pay the $2,000 to Jennie Schrader, in consideration of which the appeal of John C. Schrader was dismissed, and these facts were relied on as an estoppel against James P. Schrader. James P. Schrader filed his answer to the plea in bar as amended, and denied that he had induced the appellees in the first appeal to make the settlement, or that he knew anything about it, or had participated in the matter in any way. With the issues thus made up, the parties went to trial before a jury, and the court directed the jury to find a separate general verdict on the plea in bar. The jury returned a general verdict against the will, and a separate verdict against the then

appellees on the plea of estoppel against James P. Schrader, and judgment was entered thereon, and this appeal is prosecuted to reverse that judgment.

A number of errors are relied on. It is contended by appellant—First, that the order dismissing the first appeal of John C. Schrader is a bar under the statute to a second appeal by him, or any other person interested in the will; second, that the court erred in instructing the jury upon the question of undue influence, as it is claimed that there was no testimony introduced on the trial bearing upon this issue; and, third, that there was no evidence of lack of testamentary capacity at the time the will was executed, or, at least, that the testimony on this point was overwhelmingly in favor of the contention of appellants and that the verdict is consequently flagrantly wrong. It may be taken as settled law that a final judgment of a court of competent jurisdiction upon any disputed question of fact is conclusive as between the parties or privies to the proceeding in which the judgment was rendered; and it is equally well settled by repeated adjudications of this court that a final decision of a court (having jurisdiction of the question) probating or rejecting a will, upon appeal from an order of the county court, is a bar, while it remains in force, to any other appeal for the same purpose, not only between the parties to the record and their privies, but also to all others who may be interested in it. The reason and necessity for this rule have been so frequently argued that it would be superfluous to repeat them here. See Singleton v. Singleton, 8 B. Mon., 340; Wells' Will, 5 Litt., 275; Jacob v. Pulliam, 3 J. J. Marsh, 200; Tibbatts v. Berry, 10 B. Mon., 473; Mitchell and wife v. Holder, 8 Bush. 362; and Reed v. Reed's Trus., 91 Ky., 267 [15 S. W., 525]. But the question to be decided in this case is

not the legal effect which is to be given to a final decision in the Circuit Court on an appeal in a will case, but whether the consent order entered by agreement of the appellants and John C. Schrader in the Daviess Circuit Court, in pursuance to which his appeal was dismissed, is such a final decision under the statute as to be a bar to the appeal of James P. Schrader in the second proceeding.

The law governing the probating and rejecting of wills is found in the following sections of chapter 135 of the Kentucky Statutes: 4849 provides that wills shall be admitted to record by the County Court of the County of the testator's residence. 4850 provides that appeals may be prosecuted from the County Court to the Circuit Court of the same county, and thence to the Court of Appeals, from every judgment admitting a will to record, or rejecting it. 4859 provides that, when an appeal is taken to the Circuit Court, all necessary parties shall be brought before the court, and that either party may demand a jury to try the question whether the paper produced is or is not the last will of the testator; and it is further provided in the same section that, if no jury is demanded, the court shall determine that question, and that the *final decision given shall be a bar to any other proceeding to call the probate or rejection of the will in question.* 4861 provides that any person interested at the time of the final decision in the Circuit Court, who resided out of the State, and was proceeded against by warning order only, and any other person interested who was not a party to the proceeding by actual appearance, or being personally served with process, may, within three years after such final decision in the Circuit Court, by petition in equity, impeach the decision, and have a retrial of the question of probate.

It will be observed that section 4850 provides that an *appeal* may be taken to the Court of Appeals from every judgment of the Circuit Court admitting a will to record, or rejecting a will, and that section 4859 provides that the final decision of the Circuit Court determining the question of will or no will shall be a bar to any other proceeding to call the probate or rejection of the will in question, *subject, however, to the right of appeal to the Court of Appeals,* as provided for in section 4850. It is evident from the whole context of these provisions of the statute that the final decision contemplated is such a final judgment as determines whether the paper offered for probate is the true will of decedent, or that it is not, from which judgment an appeal would lie; and in order to make effectual these provisions of the statute, which give to the final decision of a court probating a will the effect of a judgment *in rem*, so as to bind parties in interest not before the court, the requirements of the statute as to the method of procedure must be adhered to, and the fact as to whether the paper is the last will of decedent must be determined by a *bona fide* trial, either by the court or by a jury. We can not believe that it was the purpose of the statute to permit parties to an appeal of this character to enter into such agreement with each other as to take from the court the consideration and determination of the question which the appeal was prosecuted to decide, so as to deprive parties equally interested in the question, but who are not before the court, and have not been consulted about the proposed agreement, of the right to have the question passed on in one of the modes provided for by statute. In our opinion, the agreement which was entered up as a judgment of the court is not such a final determin-

ation of the question as prevents other parties in interest from prosecuting the appeal provided by law.

The next error complained of is that the court erred in instructing the jury upon the question of undue influence, it being insisted that there is no evidence in the record to justify such an instruction. The record does not bear out this broad assertion, as there is evidence which conduces to show that deceased had frequently stated—and had done so up to within a short time of her death—that she did not intend to make any will; and the fact that she postponed this important matter until within a few hours of dissolution is corroborative of this testimony. This paper was not executed until deceased had taken up her abode in the home of her daughters, and there is testimony conducing to show that their influence over her was very great. The undue influence contemplated by law is often exceedingly difficult to establish by proof. It, of necessity, depends largely upon circumstantial evidence. As said by this court in Fry v. Jones, 95 Ky., 149 [24 S. W., 6; 44 Am. St. R., 206]: "No general rule may be laid down by which this obnoxious force may be detected. * * * Manifestly, this must be done by that tribunal to which is afforded opportunity of meeting the witnesses face to face, and hearing them testify. Before such, the general bearing and conduct of the witnesses, and especially the mental characteristics of those charged with having controlled another, may become matters of personal observation and oversight. To a jury of the vicinage, therefore, must be left, in a large measure, the detection of this refined and subtle power. They may not determine its presence without evidence of it, but we may well hesitate to determine the absence of such evidence when, in their wisdom, it is found to be present." The question of undue influence was not prominent, and was

not the point on which this case turned, but we can not say that there was not enough proof to authorize an instruction on the question.

The main ground relied on by appellant, and that to which most of the proof was directed, was that testator, at the time she executed the paper in contest, did not have sufficient capacity to do so; and it is urged by counsel that the verdict of the jury was so flagrantly at variance with the weight of the evidence on this point that it is the duty of this court to reverse the judgment, and grant a new trial, for this reason.   The testimony as to mental capacity to execute the paper is conflicting, and the duty of determining the question is one which the law imposes upon a jury; and the statute provides that the same effect shall be given to their verdict in a will case as in any other civil proceeding.   See Ky. Stat., section 4850.   We are not authorized to ignore the testimony of quite a number of witnesses, including a brother and a nephew of the deceased, several reputable physicians, and her nearest neighbors, who testify to facts conducing to show that, for several years prior to the execution of the paper in contest, deceased had at times been subject to hallucinations, which could only be the offspring of a mind diseased, and who are emphatic in the expression of the opinion that, by reason of mental infirmities, she was incompetent to execute a will.   It is impossible for this court to determine the degree of weight which shall be attached to the testimony of individual witnesses.   This must be relegated to the sound discretion of the jury, who have the opportunity to see the witnesses and hear them testify.   And we feel, after a careful and thorough consideration of this case, that there is no legal ground for reversal.

Wherefore the judgment is affirmed.