CASE 2—ORDINARY—FEBRUARY 5, 1883.

# Wise, &c., v. Foote, &c., &c.

APPEAL FROM KENTON CIRCUIT COURT.

1. The contract between appellant and the testator, the checks, letters, &c., wholly or partially in the hands of the latter, his bank accounts, and amendment to the city charter in his handwriting, are competent evidence upon the issue of capacity to make a will.

2. The opinions of witnesses not experts as to the mental capacity of the testator are relevant, if they knew him and had an opportunity of observing him. The weight and value of such opinions are for the consideration of the jury.

3. This court will not reverse upon the ground that leading questions have been asked of a witness whose answers bear the impress of truth.

4. The fact that appellee, Mrs. Foote, testified, should be treated as an election by her to exclude her husband, she being the meritorious cause of action.

5. Influence obtained by proper persuasion and argument, or by mere appeals to the affections, is not undue influence in a legal sense.

6. But influence obtained so as to enable a party to destroy the free agency of the testator, is such as the law condemns as undue influence.

7. Capacity to make a will exists where the testator has mind and memory sufficient to understand that he is selecting the persons whom he desires to have his property, to know his property, and the objects of his bounty.

8. There is no error in either giving or refusing instructions.

McKEE & FINNELL AND W. W. CLEARY FOR APPELLANTS.

1. There was a studied, persistent effort, by all the other parties, by every means, fair or foul, to deprive appellant, James S. Wise, of any interest in the estate of his grandfather.

Wise, &c., v. Foote, &c., &c.

2. Many questions asked of witnesses are leading.

3. It was error to deprive appellant of the testimony of C. D. Foote, husband of Mary Foote, one of the appellees.

4. Instruction No. 3 is erroneous. It makes the test of the capacity of Arnold to depend upon his knowledge of what he was doing at the time he made the erasures, excluding from the jury all question as to his testamentary capacity at any other time.

5. The court erred in refusing to give instructions 1, 2, 3, and 4 asked for by appellant. (Williams on Executors, vol. 1, p. 179; Redfield on Wills, ch. 8, sec. 3, p. 368; Alexander v. Waller, 6 Bush, 341; 3 B. Mon., 393; Armstrong v. Armstrong, 14 B. Mon., 338.)

BRECKINRIDGE & SHELBY FOR APPELLEES.

No brief.

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

The appellant Wise was one of several contestants of the will of James G. Arnold, which was probated by the county court, and, on an appeal to the circuit court, again sustained.

The testator bequeathed $10,000 each to his grandchildren except two, whom he omitted, and devised the residuary of his estate to his own children.

The grounds on which the probate was opposed were incapacity and undue influence, and many questions relative to the competency of witnesses and the relevancy of testimony were raised in the trial of those issues, and are presented by the numerous and comprehensive assignments of error, which also embrace alleged errors of law in the instructions given to the jury.

The appellant is a grandson of the testator, and an only child of one of his deceased daughters, and would, therefore, in the event of the rejection of the will, be entitled to one fifth of the whole estate as heir and distributee.

The record is full of all sorts of counter-currents running through the trial below, but as they now mingle in one untroubled stream, except the branch represented by the

appellant Wise, only his assignment of errors will be considered.

The evidence is amply sufficient to sustain the verdict, if, as we think, no error of law affecting the substantial rights of the appellant was committed at the trial.

The written contract between appellant and the testator, the checks, letters, receipts, and other documents, wholly or partially in the handwriting of the testator; his bank accounts and amendment to the city charter in his handwriting, were competent and relevant evidence to the issue of incapacity.

They represented transactions, and the manner in which he participated in them, within a period sufficiently connected with the testamentary act to illustrate its character and the condition of his mind when he performed that act.

And it is no reason for their rejection, or the rejection of any of them, that, from the verdict of the jury, it may be seen that the jury believed and found him mentally incompetent at a time antedating the transaction. How could the able judge who presided have prescience enough to anticipate the verdict of the jury? or what right had he to say in their presence, either by word or ruling, that the testator was incompetent, after a given date, to sign or write a paper or perform an act, when that was the very question the jury were, by law, required to try?

As to the opinions of witnesses, who were not experts, touching the mental capacity of the testator, this court has held that they are relevant, if the witnesses whose opinions on that subject are sought knew the testator, and had any opportunity of observing him; the weight and value of such opinions being for the consideration of the jury.

It is a difficult thing to put a question which will not be leading in any degree, and unless the rule has been abused or violated to guide a dishonest witness, or the substantial rights of the opposing party were prejudiced thereby, or the propriety to be observed in judicial proceedings in eliciting truth be shocked, this court will not reverse a cause on the ground that leading questions have been propounded to a witness whose testimony bears the impress of truth notwithstanding. Therefore, the leading questions complained of do not, in our opinion, constitute a legal and sufficient ground for reversing this case, which took weeks to try and great labor to prepare.

The appellant insists that he had the right to elect that C. D. Foote should testify instead of his wife, Mrs. Foote. These jarring claims to precedence between the contestants cannot ·be allowed to affect the rule which should prevail under the statute.

Section 606, sub-section 1, Civil Code, provides that neither husband nor wife shall testify in any case *against* the other. And it provides only two classes of cases in which they are permitted to testify *for* each other:

*First.* In an action for lost baggage or its value against a common carrier, innkeeper, or wrong-doer, wherein both or either may testify.

*Second.* In actions which might have been brought by or against the wife, had she been single; in other words, where she is the meritorious cause of action. In such actions either, but not both, may testify.

This was an action which belongs to the second class of cases named, in which either, but not both, of them may testify; for, had she been unmarried, she could have brought the action, and it could have been brought against her.

The court below held that either could testify, but both could not, and this was correct.

Mrs. Foote, without claiming the right to elect which had precedence to testify, did testify for herself and husband, and this act of hers should be treated as an election to exclude her husband and to testify herself, as we think she had the right to do in an action of this class.

The ground on which the statute admits her to testify at all, either for herself or husband, is that she is the meritorious cause of action, or would possess the right of action or defense were she unmarried, and there is justice in the statute, which should be so construed as to give to her the complete benefit of its provisions.

If her property and rights be at stake in the action, she has the right to elect to offer herself as a witness, and even exclude the husband by her election. (9th Bush, 719.) Hence, no party to the action, whether joined with or arrayed against her, can take from her the right to appear as a witness in her own behalf when she is the meritorious cause.

And where she has been called on by a party in interest with her to testify, as in this case, another party in interest with her has no right to complain of the ruling of the court in admitting her testimony, on the ground that he preferred her husband to testify, for she simply submitted to what she had the right to demand, and the objector was overruled by the act of those with whom he was making common cause.

There is no avowal of what Mrs. Foote was expected to prove in relation to the matters embraced by the tenth assignment of error, and that error cannot, therefore, avail anything, as the witness was permitted to testify as to the support and means furnished T. N. Arnold through the

alleged demands and commands of his mother, whose declarations not in the testator's presence were also properly excluded.

The criticism by counsel of instruction No. 1, given at the instance of T. N. Arnold, in respect to undue influence, is not well founded, as that instruction does not undertake to define undue influence, and Arnold's second instruction, which did embrace his view of undue influence, was refused.

Influence obtained by modest persuasion and arguments addressed to the understanding, or by mere appeals to the affections, cannot be properly termed undue influence in a legal sense; but influence obtained by flattery, importunity, threats, superiority of will, mind, or character, or by what art soever that human thought, ingenuity, or cunning may employ, which would give dominion over the will of the testator to such an extent as to destroy *free* agency, or constrain him to do against his will what he is unable to refuse, is such an influence as the law condemns as undue when exercised by any one immediately over the testamentary act, whether by direction or indirection, or obtained at one time or another.

The instruction "B" given by the court sufficiently embraces this explication of undue influence.

Testable capacity does not rise to that high degree of understanding and ability necessary to render a person capable of making a contract where the parties deal at arm's length, but exists where the testator has mind and memory enough to understand that he is selecting the persons whom he wishes to have his property, and to know his property, and the natural objects of his bounty, and his duties to them and the persons upon whom his property is bestowed by the testamentary paper which he signs.

The instructions, when considered as a whole, fully present this view of the law to the jury, and without following counsel into isolations of parts of instructions which he attacks in detail, we are satisfied, after placing all of the instructions in one view, and considering the common sense relation which they bear to each other, that the whole law of this case was not only expounded to the jury but understood by them.

Wherefore, the judgment is affirmed.