## Murphy's Ex'r, et al. v. Murphy, et al.

(Decided January 24, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Wills—Testimentary Capacity—Scintilla Rule—Undue Influence.— In a contest over the will of John Murphy, deceased, although the evidence was conflicting as there was at least a scintilla tending to show the want of testamentary capacity on the part of the testator, and considerable evidence tending to show undue influence emanating from the chief devisee, which caused the testator to make the will, the case was properly allowed to go to the jury.

2. Same—Question for Jury.—As undue influence is generally employed surreptitiously the evidence by which it is established is in a very large degree, circumstantial, and the question of undue influence is especially one for the jury.

3. Same—Burden of Proof—Evidence.—The burden of proof upon the issue of undue influence is upon the contestants of the will, but it may be established by a simple preponderance of the evidence; and in a will case, where the grounds of contest are mental incapacity and undue influence, the evidence is necessarily allowed to take a wide range, and every fact and circumstance that may throw light upon either of these facts, is admissible.

4. Verdict—Not Flagrantly Against the Evidence.—As the verdict

of the jury was not flagrantly against the evidence, the refusal of the trial court to grant a new trial was not error.

O'DOHERTY & YONTS for appellant.

THUM & ROY, R. J. HOGAN, O'NEAL & O'NEAL and FRED FORCHT, JR. for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is the second appeal from the judgment of the Circuit Court setting aside the will of John Murphy, deceased, commonly known at Pat Murphy, and is prosecuted by Michael Murphy as executor of the will and principal devisee thereunder. The first appeal was also taken by him and the opinion therein, which reversed the judgment and remanded the case for a new trial, will be found in 32 R. at page 839.

John Murphy died at his residence, in Louisville, in July 1900, survived by two brothers, Michael and Dan Murphy, and two sisters, Ann Bell and Bessie Hoagland. By his will his entire estate, except a legacy of $10, to his sister, Ann Bell, was devised to his brother, Michael Murphy, who was appointed executor of the will and duly qualified in that capacity. The other brother and sisters contested the will on the grounds that the testator was lacking in the capacity to make a will; that the will was procured by the undue influence of Michael Murphy over the testator, and was by fraud on his part caused to be executed. It is proper to say that it was held in the former opinion that the evidence contained in the record of that appeal failed to show that the execution of the will was procured by fraud on the part of Michael Murphy, and no effort was made on the last trial to prove such fraud.

For the purpose of showing the relations of the parties to the contest and the past relations of each of them with the testator, we here insert an excerpt from the opinion in the first appeal:

"The proof shows that the Murphy family moved to America in 1853, and finally located in Louisville. The father died while the children were quite young. They all worked together and their mother was made the common treasurer. The girls married and moved to themselves. Dan Murphy, one of the boys, married and moved to himself. John Murphy and Michael Murphy continued to live with their mother. John was a news-

boy by profession and was noted for his thrift and economy.  The Murphys accumulated a considerable estate before their mother died.  She left a will by the terms of which she practically disinherited one daughter, Ann Bell, who was living in New Orleans, and while she gave to her other daughter, and to her son, Dan, a portion of her estate, she gave to her sons, John and Mike, the larger part thereof.  Her will was contested, but was upheld.  The litigation over her estate was terminated on the 26th of June, 1895; on the 16th of July, 1895, John Murphy had his will written by the terms of which he gave everything he had to his brother, Michael Murphy. He and Michael lived together during the remainder of his life.  This contest was instituted in the Jefferson Circuit Court on the 19th of October, 1901.''

It is now insisted for appellant that the judgment appealed from should be reversed, because the verdict of the jury was flagrantly against the evidence, which, it is claimed, established the possession by the testator of testamentary capacity and also the absence of undue influence.

It must be admitted that quite a number of witnesses, whose acquaintance with the testator was intimate, and whose opportunities for knowing his habits and condition of mind seemed to be better than all others, testified unqualifiedly to his testamentary capacity.  The testimony of many of these witnesses was not confined to mere expressions of opinion as to the testator's capacity, but contained mention of instances as to business transactions and acts on his part manifesting such capacity.  We may also say that the circumstances attending the writing and execution of his will, as testified to by his attorney, the witnesses to the will and others, conduced to show that the testator was possessed of sufficient capacity to make a will.

On the other hand there was evidence to the effect that the testator never had a strong mind; that he was a physical and mental weakling and that at the time of making the will, prior thereto, and down to the time of his death, he was in feeble health and an invalid; and that his state of health had a tendency to impair, and did impair, his intellect and weaken his understanding. It is true some of the evidence as to want of testamentary capacity, consisted of mere expressions of opinion, on the part of non-experts, as to the testator's incompetency, but non-expert witnesses claiming to know, and

having an opportunity to observe the conduct of a testator, may give their opinions as to his mental capacity, the question of the weight and value of such opinions being for the jury.

As said in Newcomb's Exrs. v. Newcomb, 96 Ky., 120:

"The opinion of a non-expert is competent evidence as to the capacity of the testator to make a will, where he had an opportunity to form an opinion, and he need not be able to detail the specific facts on which his opinion is based." Wise v. Foote, 81 Ky., 10.

If appellant's contention had been limited to the assertion that, as to the question of the testator's mental capacity, the verdict is not sustained by the weight of the evidence, we would be disposed to admit its force, but even then it would not be our province to set aside the verdict on that ground. We may interfere when the verdict is unsupported by any evidence, or when it is flagrantly against the evidence, but are not at liberty to do so, merely because it is in our opinion against the weight of the evidence.

We now come to the consideration of appellant's further contention that, as to the question of undue influence, the verdict was flagrantly against the evidence. We understand the rule to be as stated in Page on Wills, Section 407, wherein it is said:

"The burden of proof is never greater upon the issue of undue influence than the duty of establishing the issue by a preponderance. It is, therefore, error to charge the jury that in order to avoid the will, the circumstances of execution must be inconsistent with any hypothesis except that of undue influence."

Again the same author says in Section 404:

"As undue influence is generally employed surreptitiously, the evidence by which it is established is, in a very large degree, circumstantial, and the question of undue influence is especially one for the jury."

While it is the doctrine in this State that the burden of proof upon the issue of undue influence is upon the contestants of the will, yet it may be established by a simple preponderance of the evidence. Johnson v. Stevens, 93 Ky., 128; Barlow v. Waters, 16 R., 426; Dunaway v. Smoot, 23 R., 2289; Powers v. Powers, 25 R., 1468; Milton v. Hunter, 76 Ky., 163; Lichy v. Schrader, 104 Ky., 657; Johnson's Admr. v. Johnson, 20 R., 139; Fry v. Jones, 95 Ky., 149.

In Walls v. Walls, 30 R., 950, we said:

"Direct proof of undue influence can seldom be had. Like fraud it must be proved, ordinarily by circumstances, and though each circumstance standing alone might be quite inconclusive, yet the effect of all the circumstances, when taken together, may be more convincing. It has often been said that if under all the circumstances of the case the will is unnatural in its provisions, and inconsistent with the obligations of the testator, to the different members of his family, the burden rests upon the propounder to give some reasonable explanation of its unnatural character. It is true, this court has said that an instruction so declaring should not be given to the jury under any system of practice, but the soundness of the principle of law has never been doubted. The rule is that if there is any evidence, the question is for the jury. The scintilla rule has been so long followed in this State that the question is no longer open." Watson, Exr. v. Watson, 121 S. W., 625.

In the recent case of Barber's Exr. v. Baldwin's Exr., 138 Ky., 734, inequality in the distinction made by the testator of his estate was one of the things relied on by the contestants to show undue influence. There was but a scintilla of evidence tending to show undue influence on the part of the beneficiaries of the will. The court said:

"These acts and circumstances being some evidence, slight it may be conceded they are, it was the duty of the trial court, under the oft announced rule of this court, to submit the question to the jury for their determination under proper instructions."

There was in this case considerable evidence conducing to show that the appellant, Michael Murphy, had great influence over the testator; that he saw to his comfort, controlled his expenditures, advised his investments, made them for him, collected the rents accruing on the testator's and their joint property, and had absolute control of the testator's as well as his own financial affairs; that in addition, he on one occasion took to himself the title to valuable real estate, bought with the testator's money. Moreover, that the testator always lived with him and was at all times apparently subservient to his will; that the testator was a sick and feeble man for years; and that appellant, being physically the stronger man and possessed of a more vigorous mind, appeared to control his conduct. There was also

some evidence that appellant had been known to abuse the testator, and that he kept him intimidated and under physical fear; also that he excluded from the testator's home and presence his brother and sister. One witness, Mrs. Harris, a niece of appellant and the testator, testified that on one occasion the testator was heard to request appellant to do right by his brother and sister.

On the other hand appellant's evidence in support of the will conduced to prove that the relations between himself and the testator were at all times cordial and affectionate; that together they helped their mother to accumulate the estate which she devised them by her will, and following her death they continued to live together, work together and accumulate property, the title to much of which was held by them jointly; that while appellant assisted the testator in his business affairs he accounted to him for whatever he collected for him, and that the relations so long existing between them furnished the motive for the testator's making appellant the practically sole beneficiary of his will.

Appellant's evidence further conduced to prove, in explanation of the testator's exclusion of his brother, Dan, and sisters, from any participation in his estate, that they had contested their mother's will which gave appellant and the testator the bulk of her estate, and had thereby put them to great expense and annoyance, and moreover, that the mother before her death had fairly provided for Dan and the sisters out of her estate.

The synopsis we have here given of the evidence, both for and against the will, without attempting to discuss the testimony of any single witness in detail, will serve to show that the case was properly submitted to the jury. Upon this evidence, which was practically the same throughout, there were four trials of the case. In two of the trials the jury failed to agree, but in the last two trials, they found against the will.

Kentucky Statutes (section 4850) declare that the same effect shall be given to the verdict of a jury in a will case as is given to the verdict of a jury in other civil cases. It is also well settled that the court has the same right, and no more, to grant a new trial in a will case as in any other cases tried before it, and in reversing this case on the former appeal, we said:

"Upon the retrial of this case, if the evidence offered is practically the same as that offered on the last trial, the court will instruct the jury as above indicated."

In view of this situation, we do not feel at liberty to set aside the verdict, either upon the ground that it is not sustained by, or is flagrantly against the evidence.

We do not think the court erred in permitting to go to the jury the testimony of Mamie Harris and others that appellant collected moneys for the testator for which he did not account, and that he did not pursue any regular employment for many years before his brother's death. The evidence in question was certainly competent in view of other proof as to the relations between the parties, the manner of conducting their business, and as illustrating appellant's control of such business and dominion over the mind and will power of the testator.

As said in McConnell's Exor. v. McConnell, 138 Ky., 783:

"In will cases, where the grounds of contest are under influence and mental incapacity, the evidence is necessarily allowed to take a wide range, and every fact and circumstance that may throw light upon either of these facts is admissible."

We have discovered in the record no incompetent evidence, and the jury were instructed by the trial court as directed by this court in the opinion of the former appeal.

Wherefore, the judgment is affirmed.