### Brewer v. Brewer, et al.

(Decided September 17, 1913).

## Appeal from Todd Circuit Court

1. Verdict—Wills.—The verdict of a jury sustaining a will will not be set aside as against the evidence, where it is not palpably contrary to the evidence.
2. Instructions—Wills—Insane Delusion.—An instruction on insane delusion on the part of the testator about his children was properly refused where the evidence failed to show such delusion on his part.

O'REAR & WILLIAMS and MAX M. HANBERRY for appellant.

S. Y. TRIMBLE, TRIMBLE & BELL and JAS. R. MALLORY for appellees.

Opinion of the Court by Chief Justice Hobson— Affirming.

W. B. Brewer died a resident of Todd County in the fall of 1908. He executed a will on August 25, 1908, which after his death was probated in the Todd County Court. His oldest son appealed from the order of the county court to the circuit court where the case was tried before a jury who found a verdict in favor of the will; and judgment having been entered upon the verdict, he prosecutes this appeal.

By the will the testator directed that after his debts were paid $500 of his life insurance policy be used for the erection of a monument over his grave, and that on this monument should be inscribed the offices which he had held in certain orders to which he belonged. He left to his wife, Albertine Brewer, the house and lot on which they resided, the printing office and lot adjoining, in fee simple, in order to repay her for the money she gave him after they married. He also bequeathed to her all the household and kitchen furniture and a horse and buggy. He bequeathed to his son, appellant W. C. Brewer, the sum of $10, stating that he did this because he had had to spend so much money on him that he thought this was all he was entitled to. He directed that his wife have one-half of all his personal property left after the $500 was taken out for the monument, including insurance money, lien notes, etc. He devised to his daughter, Bertha B. Wilkins, and his son, Clarence B. Brewer, one half each of the remainder of all his property, real and personal, except his library, and directed that the estate devised to them should be held by a trustee.

The chief complaint made on the appeal is that the verdict is palpably against the evidence. The facts are briefly these: The deceased was about 59 years old; he had been in bad health since about February 1908, suffering from a bladder trouble. In the fall of the year, he suffered a stroke of paralysis which later caused his death. Up to the time he was taken sick he was a man strong physically and mentally. He began life without education and without property, as a shoemaker. He became later in life a self-educated man. At his death he owned a library of about one thousand volumes, and had for a number of years been running a newspaper. He had served as magistrate and post master of the town where he lived; for a number of years he had taken

a leading interest in the graded school of which he was one of the trustees. He was a man of strong convictions and strong character. By his first wife he had three children, the youngest being an infant when she died. By the second and third wives he had no children. The third wife, Albertine Brewer, to whom he was married about the year 1885, survived him. The youngest of the children was about two and one-half years old when they were married; the daughter, Bertha, was about eight, and W. C. Brewer, the oldest son was about twelve years old. The proof for the contestant on the trial was in substance to the effect that their father was unkind and cruel to the children after his third marriage, although he had been very kind and affectionate to them theretofore; and that this was due to the influence of his wife; that he whipped W. C. Brewer unmercifully with a horse whip and cow hide, and treated him cruelly; that he had in fact spent no money on him, and in substance that he entertained an insane delusion as to his son's profligacy and the amount of money which he had spent upon him. On the other hand, the proof for the will by a number of neighbors and friends of the family was to the effect that the third wife treated the children kindly, took good care of them, and that the father was much the same as he had always been; that W. C. Brewer was wild and dissipated; often getting into trouble, and that his father tried in many ways in vain to induce him to reform. We deem it unnecessary to go into the minutiae of the proof. W. C. Brewer admits himself that he did not speak to his father from the year 1895 until his death in 1908, although most of the time he was living in the same town with him. The father was a man of strong likes and dislikes, and while there was sufficient evidence to take the case to the jury, the great weight of the evidence shows that the testator was of sound mind and understood perfectly the will that he had made. There was a little evidence of undue influence, the fact being that W. B. Brewer was at all times the ruling spirit of the household. The will was the result of a settled conviction on his part. that this was the just disposition of his estate, a conviction he had entertained for many years before his death, when his health was perfect.

The court gave the jury these instructions:

1. The court instructs the jury that they should find the paper in controversy to be the last will and testament of W. B. Brewer unless the jury believe from the

evidence that said Brewer was of unsound mind at the time of the execution of said paper, or that the execution of said paper was procured by undue influence.

2.  If the jury believe from the evidence that W. B. Brewer was not of sound mind at the time of the execution of the paper in controversy, or that said paper was procured by undue influence, they should find said paper not to be the last will and testament of said Brewer.

3.  A person is of sound mind in making a will, if at the time of its execution he has such mental capacity as to enable him to know the natural objects of his bounty, his obligations to them, the character and value of his estate and to dispose of it according to a fixed purpose of his own.

4.  Undue influence is any influence over the mind of the testator to such an extent as to destroy his free agency and to constrain him to do against his will what he would otherwise refuse to do, whether exerted at one time or another, directly or indirectly, if it so operated upon his mind at the time he executed the paper. But any reasonable influence obtained by acts of kindness or by appeals to the feelings, or understanding, and not destroying free agency, is not undue influence.

5.  The court instructs the jury that if they believe from the evidence that the testator W. B. Brewer at the time he executed the paper in controversy was under an insane delusion as to the conduct of his son, Carl Brewer, in the community or towards the testator or as to the money that he had lost or expended on account of his said son, and that he was of unsound mind on these subjects, or either of them, and that said testator by reason of such unsoundness of mind made a different disposition of his estate from that which he otherwise would have made, then and in that event the jury should find the paper not to be his last will and testament, although said testator was of sound mind on other subjects; but in order to invalidate the paper in controversy on account of the testator's mistake, if any, as to his son's conduct or on account of the testator's mistake, if any, as to the money he had lost or been compelled to expend for his said son, the jury should further believe from the evidence that the testator was insane on this subject and that the paper in controversy was induced by such insanity.''

These were all the instructions given. No complaint is made of the first four instructions; but appellant asked

the court to instruct the jury in substance that if at the time of the execution of the paper, the deceased was under an insane delusion as to the conduct of any of his children and was of unsound mind on that subject, the law was as set out in No. 5. The court properly refused this instruction; for there was no evidence of any delusion on his part as to the conduct of his other two children. While there was some evidence that he was rather strict with his children, there was no evidence that he entertained any false views in regard to his daughter or the younger son. The daughter lived with him until she was married, and the younger son was living with him at the time of his death. If the instruction had been given it could have had no effect upon the result of the trial.

Judgment affirmed.