## Nicholson v. Patrick.

(Decided November 5, 1914.)

### Appeal from Whitley Circuit Court.

1. New Trial—Newly Discovered Evidence.—A new trial will not be granted where. the ground of reversal was not relied on in the lower court in the motion for a new trial.

2. Husband and Wife—Incompetency of Husband to Testify.—A wife took poison and in an action by the wife against a physician for failure to label the poisonous medicine prepared for the husband, the fact that the husband carried other medicine from the physician to the wife, did not constitute him such an agent of the wife as to render his evidence competent in her behalf.

ROSE & POPE for appellant.

STEPHENS & STEELY and TYE & SILER for appellee.

· Opinion of the Court by Judge Nunn—Affirming.

Doctor Patrick, the appellee, was a practicing physician at Proctor, a mining camp, in Whitley county. As there was no drug store or pharmacist in the town, Dr. Patrick not only prescribed but compounded his medicines. One of his patients was William Nicholson, husband of appellant. About two months before the happening which occasioned this law suit, Mr. Nicholson went to Dr. Patrick's ·office complaining of a stomach trouble. The doctor prepared for him a mixture of nux vomica and may-apple root. The doctor does not admit that the mixture was a poison, but contends rather that it was a poisonous medicine. The proof shows it to be alkaloid of strychinine, and two teaspoonsful of it to be equal to $\frac{1}{8}$ grain of strychnine. The mixture was a brown color, and in a two-ounce bottle, and, as the doctor swears, he pasted on it a label with this written direction: "Take 5 drops in water after each meal." He also gave the directions verbally to Mr. Nicholson. A few weeks afterwards, Mrs. Nicholson, suffering from some menstrual disorder, consulted the doctor in his office and he prepared for her a remedy in a three-ounce bottle, of a brown color, but, without placing any label on the bottle. He gave it to Mrs. Nicholson, and told her the dose was a teaspoonful as needed. It is not disputed that Mr. and Mrs. Nicholson received the benefits expected from taking the medicines as prescribed. About half the contents of each bottle had been

used. There was a medicine shelf in the kitchen of the Nicholson home, which served as a repository for both vials, although there is nothing in the evidence to show that either was aware that the other was taking medicine, or at all afflicted, or knew that there was more than one vial on the premises.

On the morning in question, after Mr. Nicholson had gone to his store about 200 yards distant, and the doctor was some three miles away, Mrs. Nicholson felt the need of her medicine because of the recurrence of her monthly period, and, going to the shelf, poured out of the bottle, which she thought contained her medicine, a teaspoonful and swallowed it. Almost immediately, she went into convulsions. Some of her children called in the assistance of several neighbor women and sent for Mr. Nicholson. Dr. Patrick soon got word of her condition, and reached there in about an hour. By that time she had returned to consciousness, and told the doctor that it was the time for her monthly sickness, and that she had taken a dose of the medicine which he had prescribed for her. The doctor assumed that she was suffering only from her female trouble, and no doubt attributed her marked improvement to the efficacy of his medicine. With her husband he went to his office and sent back some pills. On returning, the husband gave her another teaspoonful of medicine out of the same bottle from which she had taken the first dose an hour before, and which all supposed was the bottle prepared for her a month before by the doctor as a remedy for her female trouble. From an avowal in the case, we learn that the husband would swear that Dr. Patrick told him to give her another dose of her medicine, because there was nothing better for her trouble, and then, in about 15 minutes, give her the pills. Anyhow, the medicine again threw her into convulsions and the doctor was hastily summoned. From her symptoms his suspicions were aroused, and he examined the bottle and found she had been taking, by the spoonful, the nux vomica and may-apple root medicine which he had prescribed for the husband two months before. There is no conflict in the proof that at this time this bottle did not have a label on it. The doctor administered an antidote and in the course of a few hours Mrs. Nicholson returned to consciousness and was out of danger, although it is not denied that she suffered ill ef-

fects for several days. Mrs. Nicholson swears that she still suffers from the effects of these two doses of poison, and there is evidence to indicate that her health is permanently impaired, although there is a conflict in the proof on this point. She sued to recover of the doctor $5,000 damages for his negligence in failing to label the bottle of poisonous medicine, which he prepared for Mr. Nicholson.

The case was squarely submitted to the jury on the question as to whether the doctor did or did not place a label on the bottle of poison. The jury returned a verdict for the doctor. Appellant does not criticise the instructions. In fact, she urges only two grounds for reversal. One is because of newly-discovered evidence. This evidence went to contradict the witness, Isaac Perry, who testified that he was in the doctor's office at the time the medicine was prepared for Mr. Nicholson, and he saw the doctor paste a label on the bottle, and write something on it, and heard the doctor give the verbal directions about taking it. Appellant in her motion for a new trial did not make the matter of newly-discovered evidence one of the grounds, and we, therefore, can not reverse for that reason. Jones v. Warden, 90 Ky., 230; American Credit Co. v. National Clothing Co., 13 Bush, 297.

The next ground of reversal is that the court refused to permit Mr. Nicholson to testify. Mrs. Nicholson testified, among other things, that the bottle from which she took the poison had no label on it at that time. She wanted to prove by her husband that the doctor did not put a label on the bottle when he gave it to him. She desired to prove, also, that when the doctor gave him the tablets, he told him to administer a second dose of the medicine to Mrs. Nicholson, and, in this way, he had occasion to see that bottle and knew it was not labeled. It is claimed that the proof is competent because it comes within that exception to section 606 of the Code, which provides:

"When a husband or wife is acting as agent for his or her consort, either of them may testify as to any matter connected with such agency."

It is unnecessary to discuss the matter of agency in connection with this case. We do not see how it could possibly have any application as to the time when the doctor mixed the poison. He was consulted by the hus-

band for himself, and the medicine was prepared and the dose directed for him only.

The doctor, in effect, admits that he directed the second dose to Mrs. Nicholson because he thought it was the same as the first, and he thought, as did all the others, that the first dose was taken from the bottle which contained the harmless medicine, which he had prepared for Mrs. Nicholson. It is immaterial what circumstance caused the husband to see the bottle. In behalf of the wife after she had testified, he was not a competent witness. It is admitted by all the witnesses that at the time she took the poison there was no label on the bottle. The question in the case, as it was prepared in the lower court, was whether the bottle was labeled in the first place, and none of the testimony offered by the husband could affect that question, except as to what occurred in the doctor's office when he received the bottle, and as he got that for himself his evidence about it was clearly incompetent. L. & N. v. Hall, 136 S. W., 905; Wise v. Foot, 81 Ky., 10.

Failing to see that the appellant is entitled to a reversal for either of the reasons named, the judgment is affirmed.