## Baker, et al. v. Lemon, et al.

(Decided October 11, 1921.)

### Appeal from Graves Circuit Court.

1. Wills—Mental Capacity.—Evidence that a testator in his will referred to a four thousand dollar life insurance policy when in fact there was no such policy, but there were two two thousand dollar policies, and that he undertook by will to dispose of life insurance policies belonging to the designated beneficiaries and not to his estate, is not sufficient to authorize the submission to a jury of the question of mental incapacity.

2. Wills—Mental Capacity—Evidence.—The opinions of non-expert witnesses, unless they be based upon tangible facts testified to by themselves or others, are insufficient to take to the jury the question of mental incapacity.

J. E. WARREN and MOCQUOT & BERRY for appellants.

ROBBINS & ROBBINS and B. C. SEAY for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

J. R. Lemon died on the 27th of January, 1919, a resident of Graves county.

Twelve days before and on the 15th day of January he made and published his last will and testament, which is the subject of this controversy.

On the night of the 6th of January, 1919, or the early morning of the 7th, the decedent was stricken with a violent attack of heart disease and was from that time until

the 27th, when he died, confined to his room, although not at all times to his bed.

His will was probated in February, 1919, and his two married daughters prosecuted an appeal from the order of probate to the circuit court, and in that court, after hearing the evidence of the contestants, the jury was peremptorily instructed to find for the will, and from that action of the court this appeal is prosecuted.

Mr. Lemon had been twice married, having by his first marriage three children, a son and the two appellants, and by his second marriage two sons, and the last wife survives him.

His estate is valued at about thirty thousand dollars and by his will he devised to his widow the home where he lived and the household and kitchen furniture, absolutely, and he also devised her absolutely the building in which his newspaper plant was situated and where it was operated. He gave to his three sons the newspaper plant and business, but charged them with the payment of any indebtedness the newspaper business might owe.

To his two daughters, the appellants, he devised jointly an insurance policy for one thousand dollars on his life. He also gave what he refers to in his will as a four thousand dollar life insurance policy to his wife and recites that such policy is payable to her.

The evidence discloses that there was no four thousand dollar policy but that he had two two thousand dollar policies, one of which was payable to his wife and the other jointly to the two appellants, the widow and the son by the first marriage.

After the preliminary showing of the execution of the will by the propounders, there were only three witnesses introduced for the contestants and only one of them, the appellant Mrs. Baker, ventured any statement that the decedent was at any time in his last illness lacking in testamentary capacity. She states that when she visited her father about a week before the will was made his attitude was not that of a man who was in his right mind, and that when she saw him again a few days before his death he seemed to be brighter but his mind still wandered, and that was just two or three days before his death; and we gather from her evidence that she had not seen him for a week before the will was so executed and for several days afterwards.

On the issue of undue influence, this same witness states in substance that the summer before her father's

death he had told her her stepmother was complaining of his doing so much for her and that she would thereafter have to get along the best she could, although she and her child could continue to live and take their meals at his home.

The other appellant, Mrs. Proctor, testified she had for several years before her marriage worked at the office with her father and that he had paid her a small salary, varying from three dollars a week to seven dollars and a half a week; that her father had had several slight spells before and that upon such occasions her stepmother would insist upon his taking some steps to straighten up his affairs; that two of her brothers had given her father a great deal of trouble and she had heard him complain of the expense to which they had put him, and she testified in a general way that her father always seemed to think the same of all his children. She also stated that at the same time her father was ill her own child was very ill and she did not see him during that period for that reason.

It also appears from the evidence that the three sons had been associated with their father in the newspaper business in various capacities.

The contestants also introduced a witness, Mr. Brand, who appears to have been an intimate friend of the decedent and a man whom Lemon had chosen to be one of the witnesses to his will, but who was out of town the day it was executed. But this witness gave no evidence, and was asked to give none, on the question of mental capacity or undue influence and was the last witness introduced.

The argument for the appellants is that the unsupported expression of opinion by Mrs. Baker that her father was of unsound mind a few days before the will was made, taken in connection with the fact that in his will he undertook to dispose of two policies of insurance on his life as if they belonged to his estate when in fact they were the property of the designated beneficiaries, should have been sufficient to submit to the jury the question of mental capacity.

We attach little importance to the fact that the testator mentioned these policies in his will; he says in the instrument that the so-called four thousand dollar policy —evidently meaning the two two thousand dollar policies—were made payable to his wife when in fact that was not, strictly speaking, true, although one of them

was made payable to her exclusively and she was a joint beneficiary with three of his children in the other. Any man, even though in vigorous health, might be guilty of such discrepancies as to the amount of the policies and to whom they were payable; or it might be that many non-professional men of intelligence would assume that policies of insurance upon which they had paid the premiums themselves belong to their estates as against the designated beneficiaries, and that, consequently, they might dispose of them by will.

So that, eliminating the life insurance incident and casting it aside as meaningless on the question of mental capacity, we have left only the unsupported statement of Mrs. Baker that her father did not have mental capacity, and on the question of undue influence we have no tangible evidence at all—only the fact that the stepmother had the opportunity to have exerted the influence if she had undertaken to or if she could have exercised it.

We, then, have the opinion of only one non-expert witness, who had seen her father only twice in a period of twenty-one days—once, a week before the will was dated, and once several days afterward—to the effect that his mind wandered and that his mental attitude was not that of a sound minded man. She gives no single tangible thing upon which to base such a statement; there is nothing stated as a basis for her opinion, and she gives that opinion in answer to hypothetical questions not fairly based on all of the evidence that she herself had given.

It is the rule in this state that the opinions of non-expert witnesses, unless they be based upon tangible facts testified to by themselves or others, are insufficient to take to the jury the question of mental incapacity. Schrodt's Executor v. Schrodt, 181 Ky. 174; Bailey v. Bailey, 184 Ky. 455.

The appellants may have adduced sufficient evidence to cause the court to suspect that the deceased had possibly not made a fair distribution of his property, but they have brought no evidence to show that he was incapable of disposing of his property according to his own desires.

The action of the trial court was proper and the judgment is affirmed.