## Bodine et al. v. Bodine.

(Decided December 1, 1931.)

(As Modified on Denial of Rehearing January 26, 1932.)

T. O. JONES for appellants.

HUBERT MEREDITH for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

J. R. Bodine, a resident of Muhlenberg county, Ky., died September 11, 1929, leaving surviving him Ella Bodine, his widow, Charles S. Bodine, a son, and Eula Bodine and Eunice Short, his daughters.

On October 19, 1927, he executed a will which was probated by the county court of his residence. From the order of probation, Charles S. Bodine appealed to the circuit court. On the trial in the circuit court with the intervention of a jury, a judgment was entered, decreeing that the paper probated in the county court as his will was not his last will and testament, from which this appeal was taken.

The testator was 68 years of age at the time the paper purporting to be his will was executed by him. He was about 70 years old at the date of his death, the 11th of September, 1929. At the time of his death he was the owner of a farm of 220 acres situated in Muhlenberg county, Ky., and 15 shares of stock in the First National Bank of Central City, Ky., of the value of about $3,000. This property was acquired through the economy and frugality, and by the earnest, industrious, co-operative, sympathetic, joint efforts, of himself and wife during their married life of about forty-two years. After their marriage and for about thirty-two years before his death, they occupied the farm as a home, until in the fall of 1928. They maintained themselves, raised and educated their children, acquired ownership of the bank stock with its proceeds. Twenty years or more before his death, the testator began to have some sort of spells which the witnesses denominate "epilepsy." In addition to this affliction, some ten or fifteen years before his death, while having a "spell," he fell out of a barn, from which he received a severe and serious injury which caused him to have to use crutches for several years. To relieve himself from the disease which was supposed to be epilepsy, he began to use a patent medicine called "Converse Treatment." He used this for six months or more. Instead of giving him relief, it began to, and it did in some degree, affect his mind. He discontinued its use. Conceiving the idea that intoxicants afforded him temporary relief, he began to use them to excess, and continued to do so for several years. During the time he was taking the "Converse Treatment" and using intoxicants, with his bodily injury resulting from his fall in the barn, and with his knowledge of the increase in the severity and frequency of the "spells," he became very despondent and discouraged, and while in this state of mind he would threaten to commit suicide. On one or more occasions he attempted to do so. It is shown that about the year 1922 he ceased to indulge in either the Converse Treatment or the drinking of intoxicants, but from this time on he continued to have the "spells" until his death. After his injury from the fall he was not physically able to engage in farm work, but he looked after his limited business, served as director in the bank, attended its meetings and the meetings of the stockholders of the bank. When he ceased to act as bank director is not

definitely shown by the evidence, nor is it definitely shown when, if at all, he quit attending the meetings of the stockholders of the bank.

His son, J. R. Bodine, was a veteran of the world War. Soon after testator's injury by the fall, his son-in-law, Short, moved on the farm engaged in farming in marketing the crops, and in handling the proceeds. On the return of his son from the war, both the son-in-law and the son operated the farm. It was reasonably well equipped at that time with farming tools, horses, cows, and hogs. They operated the farm jointly from about the beginning of the year 1920 until 1923, when the son-in-law moved to Central City. The son continued to live on the farm with his father, mother, and sister until about 1928, when he left the farm and went to California. The son had control of and operated the farm for about four years. While so engaged, the relationship between him and his father was pleasant, but there is some evidence of a dispute and unpleasantness between him and his mother and sister. The mother and sister made some objection to his attentions to a young lady with whom he was associating. The father took no part therein. No feeling between him and his father arose or resulted therefrom, and the relationship between them was cordial until his father's death.

While the son-in-law and son were operating the farm, the testator attended to chores about the farm, but did no great amount of manual labor. He worked the garden, made his little deals, gave his own checks, and kept his own bank account, borrowed money, and executed notes therefor. After the son left the farm, the testator assumed charge of it, rented it for the year 1928, collected the rent; in the year 1928 leased it for a period of years and moved to Central City where he lived until his death. On May 15, 1928, he sold the timber on 110 acres of the land for $1,250. In January, 1928, he purchased a horse of his son Charles S. Bodine, and executed to him his check therefor. While the son was operating the farm, the father executed and delivered to him checks which his son cashed. The son, at the direction of his father, "signed lots of checks" on his father's account. These transactions occurred after the will in contest had been executed in 1927.

Seven or eight years before his death, the testator executed a will, which was written by Walker Wilkins

(now deceased), a distinguished lawyer residing at that time at Central City, Ky. By it he devised one-third of his estate to his wife for life, at her death to his daughter, Eula Bodine; one third in fee to Charles S. Bodine, and one-third in fee to his son-in-law, Y. S. Short. After the execution of this will, and on his return home, he imparted to his wife the fact that he had written the will, together with information as to its provisions. She was not satisfied with it, and so expressed herself to him. She admits that on more than one occasion she expressed to him her dissatisfaction with its provisions, but the testator ignored her expressed dissatisfaction and permitted the will to continue in existence and in the custody of the officials of the bank at Central City, where he had left it on the day it was executed, until the will in contest was executed. Failing to accomplish any result by her expressing to him her dissatisfaction, she claims that she ceased to mention it to him.

On the 19th day of October, 1927, the testator again went to the office of Walker Wilkins and had him to prepare the will now in contest, which he signed in the presence of Y. E. Short and W. D. Sharp as attesting witnesses, who signed it in his presence at Wilkins' office. In the absence of undue influence and mental unsoundness, the testator had the right to change his will or to make a new one. Haskins v. Stackhouse (Ky.), 125 S. W. 179.

At the time this will was executed by the testator, his home was on his farm some six or seven miles from Central City. On the day he executed the will, he made the trip from his home to the office of Wilkins in a wagon, with the attesting witness Sharp. After the will was written, signed by him, and attested by the witnesses, the testator carried it to the bank, procured his first will, destroyed it, and left the present one. Then he and Sharp returned together to Sharp's home. After this will was written by Wilkins, one of the attesting witnesses, who was at the time employed and worked at the place of business of Burnett's Clothing Company, was called at the direction of the testator to the office of Wilkins, where he signed the will as an attesting witness.

The will is in this language:

"I, J. R. Bodine, of near Central City, Muhlenberg County, Kentucky, being of full age and of

sound mind and memory, do make, publish and declare this to be my last will and testament hereby revoking all wills by me heretofore made.

"Item 1. I direct that all of my just debts and funeral expenses be paid out of my estate as soon as practicable after the time of my decease.

"Item 2. All of the property, real and personal, of every kind and description, wheresoever situated, which I may own or have the right to dispose of at the time of my decease, I give, bequeath and devise to my beloved wife, Ella Bodine, absolutely in fee simple to be hers with the full right and power to sell, deed, convey and dispose of the same as she may see proper.

"Item 3. I make, nominate and appoint my wife, Ella Bodine to be the executrix of this my last will and testament, and I request that no bond be required of her as such.

"I further request that no inventory of my estate be made or taken in so far as the same may be lawfully omitted.

"Dated at Central City, Ky. this the 19th day of October, 1927."

The testator's son contested it on two grounds, namely, undue influence, and unsoundness of mind, of the testator. We shall consider these grounds in the order stated.

"Undue influence," to authorize the setting aside of a will, must be such influence as obtains dominion over the mind of the testator to the extent that destroys every chance of the exercise of his own will on his part in the disposal of his estate, and which constrains him, in respect thereto, to do that which he would not have done if left to the free exercise of his own judgment, and it is not material when this undue influence was exerted, if it was present and operated on the mind of the testator at the time of his execution of the paper. Wood v. Rigg, 152 Ky. 242, 153 S. W. 214; Mossbarger v. Mossbarger's Adm'x, 230 Ky. 230, 18 S. W. (2d) 997, 999; Wise v. Foote, 81 Ky. 10; Sherley v. Sherley's Ex'r, 81 Ky. 240; Barlow v. Waters, 28 S. W. 785, 16 Ky. Law Rep. 427; Broaddus' Devisees v. Broaddus' Heirs, 10 Bush, 299; Lucas v. Cannon, 13 Bush (76 Ky.) 650; Stutiville's Ex'rs v. Wheeler, 187 Ky. 361, 219 S. W. 411.

In Broaddus' Devisees v. Broaddus' Heirs, we held that undue influence must be such as amounted to coercion or force, or such as destroyed the power of testator to act in accordance with his own purpose in the disposition of his property.

In Lucas v. Cannon it was said: "Undue influence is an influence obtained either by flattery, excessive importunity, or threats, or in some other mode by which a dominion is acquired over the will of the testator, destroying free agency."

In Mossbarger v. Mossbarger's Adm'x, this language was used:

"Undue influence is such overpowering of the testator as destroys free agency, and constrains action which would not otherwise be taken. If such sinister influence is exerted directly or indirectly upon the testator's mind, bringing about the execution of the purported will the instrument is not regarded as the act or will of the testator. Undue influence is necessarily a wrongful influence that destroys liberty of action. Reasonable influence, acquired by kindness, good treatment, and affection, is not unfavorably regarded, and testamentary reward to those having such influence are not interdicted. Seals v. Seals, 213 Ky. 779, 281 S. W. 982. Many opinions may be found applying the principles stated to varying situations presented by the peculiar circumstances of the particular cases. Fry v. Jones, 95 Ky. 148, 24 S. W. 5, 15 Ky. Law Rep. 500, 44 Am. St. Rep. 206; Lischy v. Schrader, 104 Ky. 668, 47 S. W. 611, 20 Ky. Law Rep. 843; Johnson's Adm'r v. Johnson, 45 S. W. 456, 20 Ky. Law Rep. 138; Murphy's Ex'r v. Murphy, 146 Ky. 399, 142 S. W. 1018; Meuth's Ex'x v. Meuth, 157 Ky. 791, 164 S. W. 63; Holliday v. Holliday, 161 Ky. 501, 171 S. W. 156; Beard v. Beard, 173 Ky. 138, 190 S. W. 703, Ann. Cas. 1918C, 832; Sheeran v. Jarboe, 190 Ky. 843, 229 S. W. 111; McGee v. Brame, 176 Ky. 305, 195 S. W. 473; Barber's Ex'x v. Baldwin, 138 Ky. 710, 128 S. W. 1092. This court has distinctly held, however, that something more than opportunity to exercise undue influence must be shown. Brent v. Fleming, 165 Ky. 356, 176 S. W. 1134; Seals v. Seals, supra."

There is no direct evidence of undue influence shown in the pending case. There is nothing shown more than an inference that because of friction between the son and the mother and daughter during the time they occupied the home of the testator, and because the wife made known to the testator her dissatisfaction with the first will, that the testator was unduly influenced in the execution of his will in 1927. The wife and the testator by their joint efforts had acquired the whole of the estate disposed of by the first will. She had spent her life in discharging faithfully and loyally her duties as a wife to him, giving birth to his children, assisting him in the rearing, educating, training, and developing them into a high type of citizenship. In his affliction, she was an attentive, considerate, devoted, patient, sympathetic, and loving wife. It is true that in his latter years by mutual arrangement between them they occupied separate beds on account of his affliction, by reason of which it was feard that he, in the nighttime, might do her some bodily injury while suffering from a "spell." Instead of this conduct indicating unsoundness of mind on his part, or her undue influence over, or an aversion for, him, it is strong evidence of not only good judgment on the part of both, but a proper respect for each other. It should not be said that simply because, under the appearing circumstances, she made known to him her dissatisfaction with the will which would have limited her in her old age merely to the use of a life estate in one-third of the property which they had acquired as an effort of their joint labor, this was "undue influence" according to a fair, just, and unbiased interpretation of the proven facts, when measured by the general rule applicable in such cases. The first will was made during the period of time when testator was taking a patent medicine known as "Converse Treatment" or indulging in the excessive use of intoxicants to allay and help his affliction. The limiting of his wife to the mere use of a life estate in one-third of their property under the circumstances disclosed by the record furnished to his wife probable cause for her dissatisfaction with the provisions of the first will. Her conduct in this respect amounted to no more than a reasonable appeal to the reason of the husband to do that which his duty to her should have moved him to do and which common justice demanded of him. Such conduct under the proven facts cannot be considered as substantive evidence of the

714

exercise of undue influence. Brewer v. Brewer, 154 Ky. 662, 159 S. W. 540; Mossbarger v. Mossbarger's Adm'x, supra.

On the issue of unsound mind, the evidence is as indefinite and unreliable as that on the issue of undue influence. It is apparent that on its face and by its own language the testator's will is potent evidence of intelligence, and of the commendable purpose of its maker to deal fairly and justly with the companion of his life by reasonably providing for her comfort and wants in the final years of her life. Mossbarger v. Mossbarger's Adm'x, supra. The burden of proof was on the contestant to establish by substantive evidence that such a will was the product of an unsound mind. Boone v. Ritchie, 53 S. W. 518, 21 Ky. Law Rep. 864; Henning v. Stevenson, 118 Ky. 318, 80 S. W. 1135, 26 Ky. Law Rep. 159.

To sustain the issue of unsoundness of mind, the contestant introduced himself and sixteen other witnesses. To overcome the evidence in his behalf, the contestee Mrs. Bodine introduced herself and ten other witnesses. No physician testified in behalf of either the contestant or contestee. The witnesses for both were laymen. But by the testimony heard in behalf of the contestant, and its sufficiency and weight, must be determined the contestee's right to a peremptory. Prewitt v. Higgins, 231 Ky. 678, 22 S. W. (2d) 115. The testimony in her behalf may not be considered on the determination of her right to a peremptory, except when the motion for it was offered at the conclusion of all the evidence, it appeared that the evidence in her behalf supplied the insufficiency of the evidence in behalf of contestant sufficient to withstand a peremptory.

Nonexpert testimony of neighbors and friends as to the mental capacity of a testator and their opinions thereof are admissible evidence in such cases where the witnesses were well acquainted with the testator and had an opportunity to observe him and to form an opinion. Beatty v. Caldwell, 210 Ky. 559, 276 S. W. 547. But, unless the tangible facts testified to by nonexpert witnesses as the basis of their opinions tend to establish unsoundness of mind of the testator, then such opinions of such nonexpert witnesses are insufficient to take to the jury the question of mental incapacity to make a will. Schrodt's Ex'r v. Schrodt, 181 Ky. 174, 203 S. W. 1051; Bailey v. Bailey, 184 Ky. 455, 212 S. W. 595; Baker v. Lemon, 192 Ky. 473, 233 S. W. 1050.

The opinions of such witnesses possess no more probative value than the facts upon which they are founded. If they do not state the facts, or if the facts related and the circumstances proven by them do not constitute evidence of mental incapacity, their opinions do not furnish evidence of the facts sufficient to authorize the submission of the case to the jury under the prevailing rule. Moran's Ex'r v. Moran, 233 Ky. 526, 26 S. W. (2d) 565; Hagedorn v. Scott, 228 Ky. 582, 15 S. W. (2d) 479; Wood v. Corcoran, 190 Ky. 621, 228 S. W. 32.

Reviewing and evaluating the evidence in the pending case, in the light of the principles enunciated in the cases supra, we are not prepared to say that it, as to the mental unsoundness of the testator, authorized the submission of this issue to the jury.

W. D. Sharp, one of the attesting witnesses of the will, detailed no facts, although he accompanied the testator on the day of its execution, from ten to twelve miles, or to and from the office of the lawyer who prepared it, tending to authorize his opinion that the testator did not have sufficient mental capacity to execute the will. His attestation of the will not only authenticated it, but vouched for the testator's mental capacity. His testimony to the contrary, even if based upon facts, is entitled to but little weight. McMeekin v. McMeekin, 2 Bush 79; Ellis v. Ellis (Ky.), 128 S. W. 1057.

There is no showing that testator when at Wilkins' office was either influenced or of unsound mind. No word, act, or deed is stated by Sharp or Short to indicate that testator was either influenced or of unsound mind on that day.

The several witnesses, including the contestant himself, do not narrate any conduct or statement of the testator upon which they base their opinion as to his mental unsoundness, more than that he had "epilepsy" and that his mind would "wander"; that he would tell something, and then in a few minutes probably state the same thing over he had just told; that he "could not fix his mind on one proposition and hold it there"; that they "did not consider his mind sound." Such statements are no more than mere opinions without a description of the facts upon which they were based, unless the statement that he would tell something and then repeat it be regarded as evidence of a statement of a fact. Such statement is not of that character of substantive evidence as

will authorize the nullification of a will on the ground of mental incapacity. The mere fact that he was an epileptic is not sufficient to establish mental unsoundness disqualifying him to make a will, in the absence of expert testimony describing its extent and its effect upon his mind, and that the disease deprived him of his mental capacity to execute a will.

A number of witnesses testified that they had heard the testator say "that he was thinking of jumping in the river and drowning himself"; that they had seen him have "spells." One witness testified that the testator stated to him on one occasion that he was going to town to get a job. His statement that he was going to get a job permits the inference that he was indulging in merriment. Such cannot be regarded as evidence of unsoundness of mind. Another witness claims that the testator on another occasion stated in his presence, "I am going to end my life"; and in response thereto the witness stated, "Mr. Bodine, don't you know your soul will be lost?" when the testator remarked, "I can't help it, life is not worth living." Considering that he was afflicted with epilepsy and crippled limbs which hindered his power of motion, as it is described by the evidence, it cannot be said that such declarations were more than a manifestation of the despondency of the average mind under similar circumstances and conditions. Such statements, which evidently the declarant had no real intention of carrying out, of themselves, do not tend to show that he did not have mental capacity to make a will at the date of the will, in the absence of more substantive facts.

It was shown by the testimony that Eula Bodine, his daughter, had, on more than one occasion, stated that at the time the testator executed his first will it was invalid for the reason that his mind was unsound. She admitted making the statement, and explained it by saying the first will was made during the time he was taking the "Converse Treatment." But her statement was no more than her opinion, without the facts upon which it was based. It was shown by the testimony of one witness that years before testator's death he rescued him on one occasion when he (testator) was attempting to commit suicide. Other evidence shows this act of the testator occurred during the time he was taking the "Converse Treatment," and it was so far removed in point of time from the date of the will as to be of no substantive value, even if it be not incompetent because

of remoteness in time from the date of the will. Wigginton's Ex'r v. Wigginton, 194 Ky. 385, 239 S. W. 455.

Without further detailing the evidence introduced to establish the ground of mental incapacity of the testator, it is sufficient to say that in our judgment there was not sufficient evidence to sustain the verdict of the jury under the prevailing rule so well stated in the following cases: Moran's Ex'r v. Moran, 233 Ky. 526, 26 S. W. (2d) 565; Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 948; Murphy's Ex'r v. Murphy, 146 Ky. 396, 142 S. W. 1018; Berry v. Moore, 220 Ky. 619, 295 S. W. 885; Boone v. Ritchie, 53 S. W. 518, 21 Ky. Law Rep. 864; Ellis v. Ellis, 104 Ky. 121, 46 S. W. 521, 20 Ky. Law Rep. 438; Watson's Ex'r v. Watson, 137 Ky. 25, 121 S. W. 626.

Wherefore the judgment is reversed for a new trial consistent with this opinion.