### Fidelity Mutual Life Insurance Company v. Cochran.

(Decided March 12, 1920.)

#### Appeal from Bullitt Circuit Court.

1. Insurance—Evidence of Physician—Mental Capacity—Non-Expert Witness.—It is competent for a physician or a non-expert witness, from knowledge and association with the person inquired about, to give their opinion as to his mental condition. But it is not competent for the witness to give his conclusions as to the truth or falsity of the issue being investigated.

2. Insurance—Defense of Suicide.—The defense of suicide while sane or insane to a suit upon a life insurance policy will not prevail if the insured did not have mind enough to know and comprehend the nature of his act, and that it would produce death, or that he did not have will power sufficient to resist the impulse to commit suicide.

3. Insurance— Defense of Suicide—Evidence.—Where the witnesses for plaintiff in a suit upon a life insurance policy testified to acts, conduct, and other facts indicating that the insured for some days prior to his committing suicide had suffered an impairment of his mind, and according to their opinion he was mentally incapable of realizing the nature of his act, or of resisting the impulse to commit suicide, and the record furnished no reason why the deceased would want to end his life, a verdict in favor of plaintiff will not be disturbed as being flagrantly against the evidence.

KEITH L. BULLITT and ERNEST WOODWARD for appellant.

J. F. COMBS and CHARLES CARROLL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On September 16, 1916, the appellant and defendant below, Fidelity Mutual Life Insurance Company, issued upon the life of Enoch A. Cochran a policy, whereby it agreed to pay the appellee and plaintiff below, Edyth Cochran (his wife) upon the death of her husband, the sum of one thousand ($1,000.00) dollars. The annual premium, the first one of which was paid at the time, was $46.81, and it was stipulated in the policy that "in case of self destruction, whether sane or insane, within two years from date hereof, . . . . then the liability of the company under this policy shall be limited to the return of the premiums paid hereon without interest."

On August 22, 1917, within less than one year after the issual of the policy, the insured committed suicide by hanging himself with a wire tied to a joist in a barn near his residence in Shepherdsville, Kentucky. The defendant, relying upon the above stipulations in the policy, declined to pay plaintiff the amount thereof, or to acknowledge liability in any sum more than the first premium of $48.61. Defendant's refusal was followed by this suit, and the jury found in favor of plaintiff the full amount of the policy. Defendant's motion for a new trial having been overruled, it prosecutes this appeal.

The grounds urged for a reversal are (1) incompetent evidence admitted over defendant's objections, and (2) failure of the court to direct a verdict in favor of defendant because of the absence of any testimony (or a sufficiency thereof) to show that the insured at the time did not know the probable consequences of his act, or did not have sufficient will power to govern his actions because of some impulse resulting from mental unsoundness.

The erroneously admitted testimony complained of under ground (1) consists, in the main, of testimony given by Dr. Ridgway and John W. Gaban, witnesses for plaintiff, to the effect that they were of the opinion that the insured was "so insane that he did not know the nature of his act." In support of this objection the case of Aetna Life Insurance Co. v. Bethel, 140 Ky. 609, is relied on, but the opinion in that case, instead of supporting the contention made by defendant's counsel, is direct authority for the admission of the complained of

testimony, especially as to that given by Dr. Ridgway, the family physician of the insured. The doctrine of the Bethel case, supported by text books and many other cases, is that not even an expert witness should be permitted to give his conclusions as to the truth or falsity of the issue involved and which the jury is empaneled to determine; but the opinion therein expressly authorizes an expert witness to state his opinion concerning the the fact inquired about, when it is based upon a properly framed hypothetical question, or upon facts within the personal knowledge of the witness. We take from that opinion this excerpt:

"It is permissible in the examination of a witness introduced as an expert, to submit a hypothetical question, and ask his opinion thereon; or, if the witness has personal knowledge of the matter he is inquired of concerning, he may give his opinion based on such knowledge. But the question should not be put in such form as to make the answer the conclusion of the witness, instead of his opinion. It is the office of the expert to express an opinion and the province of the jury to draw its own conclusions from the opinion so expressed."

In the instant case Dr. Ridgway testified mainly from facts coming within his personal knowledge and from observations which he had made concerning the peculiar actions of the insured for a short time preceding his death. The opinion of the non-expert witness, Gaban, was also based upon like knowledge and long acquaintance with the insured, as well as from recent observations of the acts and conduct of the insured in business matters. It is competent for a non-expert witness to give his opinion concerning the mental condition of the person inquired about based upon business transactions and association with such person. This character of testimony is constantly resorted to in will contest cases where a non-expert witness is permitted to state not only his opinion as to whether the testator was of sound mind, but also to give his opinion as to whether the deceased had sufficient mind and memory to know his property and his duty to those dependent upon him, and to dispose of his property according to a fixed purpose of his own. Wise v. Foot, 81 Ky. 10; Newcomb v. Newcomb, 96 Ky. 120, and Murphy v. Murphy, 146 Ky. 396.

The testimony complained of in this case did not transgress the rule found in the cases referred to, nor did the questions propounded seek to elicit any other answer from the witness than his opinion from his knowledge of the facts concerning the matters inquired about. If a non-expert witness may give his opinion as to the mental condition of a testator at the time he executes his will, and his opinion as to whether the testator comprehended his property, &c., and had sufficient mind to dispose of it according to his fixed purpose, we see no reason why such witness may not give a like opinion as to the sanity of one who commits suicide. We therefore conclude that the first ground urged for a reversal is not meritorious.

Briefly considering the (2) ground, it appears from the testimony of plaintiff's witnesses, in addition to their opinions to which we have referred, that the insured for some time prior to his death, was afflicted with more or less nervousness; that he complained of headaches and being unable to concentrate his mind upon the simplest business transaction. He was even unable, according to witnesses, to fill the blanks in an already prepared contract giving concessionaries certain privileges upon the grounds of the Fair Association, of which he was secretary. He was not involved financially, according to the proof, nor did there exist any domestic trouble. On the contrary, his family life was very happy, he being very much attached to his wife and only child, a daughter about ten years of age, and they were likewise devoted to him. For many years prior to his death he had been engaged in the mercantile business at Shepherdsville, and was diligent and competent in that business.

In cases of this kind, persons of long acquaintance and constant association with another are very likely to observe many things in his actions and conduct indicating an abnormal mental condition, but which it is difficult for them to portray before a jury, hence they are permitted to say, as was done in this case, that from their acquaintance with and knowledge of the deceased, and what they observed about him for a number of days preceding his death, according to their opinion he did not have mind enough to understand the nature of his act, or will power sufficient to resist the impulse to take his own life. This court has held in a number of cases that when these conditions exist, the suicide clause re-

lied on will not constitute a defense to a suit upon the policy. Aetna Life Insurance Co. v. Bethel, *supra*; Inter-Southern Insurance Co. v. Boyd, 124 S. W. R. (Ky.) 333; Sovereign Camp Woodmen of the World v. Ethridge, 166 Ky. 793, and the numerous cases referred to therein.

The two witnesses introduced by defendant testified in substance that they did not observe anything unusual or out of the ordinary with Mr. Cochran; but neither of them had any recent business transactions with him, nor did they engage him in conversation for some days prior to his death. During that time they met him only casually, and only spoke to him in passing. They were thus deprived of an opportunity to observe the facts testified to by plaintiff's witnesses. The evidence in support of the verdict of the jury in this case is stronger than it was in the Ethridge case, *supra*, and we are not prepared to say that it was so flagrantly against the testimony as to authorize a reversal of the judgment.

We therefore conclude that the court properly overruled the motion for a new trial, and the judgmnt is affirmed.