## Commonwealth Life Insurance Company v. Burnett.

(Decided April 23, 1926.)

Appeal from Pike Circuit Court.

1. Pleading—Failure of Petition, in Action on Insurance Policy, to Negative Provision Precluding Recovery if Death Occurred While Insured was Engaged in Violation of Law, Held Cured by Answer

which Raised Such Issue.—Failure of plaintiff, in action on insurance policy, to negative provision of policy precluding recovery if insured met death while engaged in violation of law, held cured by defendant's answer raising such issue, and submission to jury under instructions not complained of, and failure to sustain demurrer to petition, was not prejudicial error.

2.  Insurance—Evidence in Action on Double Indemnity Clause of Policy Held Sufficient to Entitle Plaintiff to have Case Submitted to Jury.—In action to recover under double indemnity clause of insurance policy, evidence under scintilla rule held sufficient to entitle plaintiff to have case submitted to jury.

3.  Insurance—Excluding Evidence that Insured was Habitual Drunkard Held Proper, where Issue in Action on Policy was Whether he was Drunk at Time of Meeting Death.—In action to recover under double indemnity clause under insurance policy, where issue was whether or not insured was drunk when he met his death, excluding evidence showing that insured was habitual drunkard held proper.

4.  Appeal and Error—Court's Ruling Refusing to Permit Witnesses to State Whether Insured was Drunk at Time of Meeting Death Cannot be Complained of, where no Objection or Exception was Taken to Court's Admonition to Jury at Time of Submission of Case that they could Not Consider Opinion of Any Witnesses.—In action to recover on double indemnity clause of insurance policy, refusal of court to permit witnesses to state whether or not in their opinion insured was drunk when he met his death cannot be complained of, where witnesses had testified to actions and conduct of insured, and, after both parties had objected to witnesses giving opinion, court at close of case had admonished jury they could not consider opinion evidence, to which ruling neither party objected or excepted.

5.  Insurance—Finding that Insured Met Death While Sober, and Not Engaged in Violation of Law, Held Against Evidence.—Finding of jury that insured met his death while sober, and while not engaged in any violation of law so as to permit recovery under double indemnity clause, held flagrantly against evidence.

MOORE & CHILDERS and BURNETT, BATSON & CARY for appellant.

DAUGHERTY & BARRETT for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On December 23, 1923, Victor A. Burnett was shot and killed by Butler Bales, a policeman of the city of Pikeville. He had theretofore insured his life with appellant company in the sum of $2,500.00, which sum the

company duly paid to Burnett's widow, the beneficiary of the policy and the appellee herein. By the terms of this policy it was provided, among other things, that the appellant would pay "double the sum of this policy or $5,000.00 in lieu of all other benefits in the event of the death of the insured being caused by bodily injury effected exclusively and independently of all other causes by external, violent and accidental means, while the insured is sane and sober and occurring within ninety days of such injury." The policy further provided that the foregoing provision did not apply "in the event of self-destruction, whether sane or insane, or from any violation of the law by the insured." Alleging that the death of Burnett was caused by bodily injury effected exclusively and independently of all other causes by external, violent and accidental means, while he was sane and sober, the appellee brought this suit to recover the additional $2,500.00 under the double indemnity clause above quoted. After a demurrer interposed to the petition had been overruled, appellant answered claiming that the insured had met his death while intoxicated and while engaged in a violation of law. An issue was also raised by it regarding a receipt given by the appellee to the appellant for the payment of the $2,500.00 on the uncontested part of the policy; but this issue is no longer in the case and may be disregarded. The defense thus presented by the appellant being duly traversed, the parties went to trial, and, on instructions not complained of, the jury returned a verdict in favor of appellee for the amount sued for, and from the judgment entered on that verdict appellant appeals.

The facts disclosed by the evidence are these: Victor Burnett, the insured, was a barber. Between four and five o'clock on the day of his death he endeavored to obtain some whiskey from a grocery keeper, and, failing in this effort, he then tried to obtain some Jamaica ginger, in which he was likewise unsuccessful. The next we hear of him in the record is about eight o'clock that evening when he went in a restaurant run by a man by the name of Duty to get his supper. Duty, appellee's witness, says that then to all outward appearance Burnett was sober. Burnett then went to his home on Kentucky avenue in the city of Pikeville. The witnesses who saw him going up the street say that he staggered back and forth from one side of the walk to the other. When he reached his home, they say he had to crawl up the steps to his home

although they admit that because Burnett's house was built on a steep hillside, the pitch of these steps was almost that of a ladder. On reaching his porch, he staggered into the house, remained there a few minutes and then came out cursing loudly and deeply.

Just before Burnett got home the appellee, his wife, had gone with their infant child to the home of Mrs. W. M. McCray, who lived nearby and had there sought sanctuary, telling the McCrays that her husband was hunting her to kill her.

Burnett came down the street keeping up his cursing and staggering along the sidewalk. He evidently was hunting his wife, and learning in some manner not explained that she was in the McCray house, he entered this place with an open knife in his hand. Mrs. McCray, who was at home, says that although she smelt no liquor on Burnett's breath, he was very red in the face, cursed his wife unmercifully and threatened to kill her, and also the McCrays if they did not disclose at once her whereabouts, and that fearful for their lives they opened the pantry door where they had hidden Mrs. Burnett and brought her forth. Burnett struck his wife and then forced her to leave the McCray home with him. They went down the street, with a crowd of their neighbors looking on, to their own home. As they and Burnett's mother, who seems to have joined them about this time, walked along Burnett, who was behind his wife, hunched her several times from the rear with his knee, the severity of the hunch being in dispute. He continued his loud cursing, his face was very red and he staggered as he walked. His sister, who lived close by, seeing the trouble called the police and informed them that her brother was about to kill his wife and for them to come at once. However, it was some twenty minutes or so before the police reached the Burnett home. Before the arrival of the police, the Burnetts had gotten into their residence and comparative quiet had settled down upon the community. A neighbor who lived on the opposite hillside and who could see into the front room of the Burnett home, testifies that after the Burnetts went into their house, Mrs. Burnett seated herself in an armchair and her husband seated himself on the arm beside her; that while so seated he drew his finger across his wife's throat several times. Whether he was by this threatening to cut his wife's throat, as claimed by appellant, or

was playfully tickling her under her chin, as suggested by appellee, depends on the point of view the reader may take of this and the other testimony in this case.

Just before the police arrived, a deputy sheriff by the name of Stratton, who is a kinsman of Burnett, came to the Burnett house and entered. He found Burnett in the front room, which opened out on to the front porch, standing near an interior door with an open knife in his hand. He says he smelt no liquor on Burnett's breath, and testifies that in his judgment Burnett was not drunk but just angry. Approaching Burnett in a friendly manner, he placed his hand on Burnett's shoulder and tried to persuade him to go for a ride. Burnett's answer was that he had done nothing and was not going to be arrested. Stratton assured him that he had no intention of arresting him, but Burnett remained firm and declined to budge from his home. Stratton then stepped out the front door on to the front porch, and as he did so the chief of police, James Matney, together with his deputy, Bales, came up the porch steps. The record is not quite clear as to whether or not Bales and Matney or either of them then had their pistols drawn, but as they opened the front door, which was only partially ajar, Matney commanded Burnett to put up his knife. It is admitted neither Matney nor Bales had any warrant for Burnett's arrest and that neither of them informed him that he was under arrest or attempted to arrest him before the trouble between them started. Instead of complying with Matney's command, Burnett lunged at him with his knife. Bales then hit Burnett over the head with his pistol, which staggered Burnett for a moment. Then Burnett came back again at Matney with his knife and cut him several times very severely about the face, whereupon Bales shot and killed Burnett as stated. The facts as above outlined are established by the overwhelming weight of the evidence, which in most of its details is not disputed.

For reversal, appellant first insists that its demurrer to the petition should have been sustained, because appellee did not aver that when the deceased met his death, he was not engaged in a violation of law; this being one of the conditions of the policy. In justice to able counsel who prepared the petition in this case, it should be said that the appellee when she received the $2,500.00 she did from the appellant surrendered the policy to the appellant and her counsel did not have it before them at the

time they prepared the petition and never got an opportunity to see it until it came into the evidence in this case. However, appellant by its answer set out that the deceased did meet his death while engaged in a violation of law, which claim the appellee traversed. On the trial the court put the burden of proof upon the appellee and under instructions prepared and offered by the appellant itself this issue was submitted to the jury; so that whether or not the petition was defective in failing to negative this condition in the policy, such defect, if any, was cured by the answer, and as the issue was raised and submitted to the jury under instructions not complained of the failure to sustain the demurrer to the petition, even if appellant's contention as to its being defective be conceded, was not prejudicial error. Its defect was cured by the answer. Interstate Coal Co. v. Trivett, 155 Ky. 795, 160 S. W. 731.

It is next complained that the court should have given a peremptory instruction to find for the appellant. However, under the scintilla rule prevailing in this state the court did not err in failing to do so. The testimony of Stratton, the deputy sheriff, tended to establish that Burnett was sober and was acting in his necessary self defense at the time he was killed. His testimony entitled the appellee to have her case submitted to the jury.

It is next insisted that the court committed error in the reception and rejection of testimony. The main error complained of in this connection is that the court declined to permit appellant to prove that Burnett was a habitual drunkard. The court committed no error in this connection, because the issue was whether or not he was drunk on this occasion and not whether or not he was an habitual drunkard.

It is also complained that the court refused to permit the witnesses to state whether or not in their opinion Burnett was drunk on the occasion in question. The court, however, permitted these witnesses to detail the facts on which any opinion they might have entertained would have been based, that is to say, what Burnett did, how he acted, and what he said. Although we believe that after stating the facts on which he bases his opinion a lay witness may, in addition thereto, say whether or not in his opinion the person about whom he is testifying was drunk just the same as he is entitled to say under similar conditions whether or not such person is sane: Murphy v. Murphy, 146 Ky. 396, 142 S. W. 1018;

Fidelity Mutual Life Ins. Co. v. Cochran, 187 Ky. 430, 219 S. W. 172; yet appellant cannot complain of the court's action in this regard because, after both appellee and appellant had severally objected to the witnesses of their adversary giving their opinion concerning the state of sobriety of Burnett and the court had permitted these witnesses in most instances to give such an opinion, at the close of the case and before its submission to the jury the court admonished the jury that they should not consider any such opinion evidence of any witness in the case but they should make up their own judgment as to Burnett's condition from the facts as detailed to it by such witnesses, to which ruling of the court neither party objected or excepted.

Appellant also contended in its motion and grounds for a new trial that the verdict of the jury was flagrantly against the evidence, and to this we agree. From the facts as above detailed, which, as stated, were overwhelmingly established by the evidence, it is clear that the finding of the jury that Burnett met his death while sober and while not engaged in any violation of the law was flagrantly against the evidence adduced. For this reason the judgment of the lower court is reversed, with instructions to grant the appellant a new trial herein.